# United States District Court
# Southern District of Texas

Case Number: __OSCV1847__

## ATTACHMENT

Description:

☐ State Court Record     ☑ State Court Record Continued

☐ Administrative Record

☑ Document continued - Part __3__ of _____

☐ Exhibit to: _____
       number(s) / letter(s) _____

Other: _____

_____

_____

Moreover, appellant's claim is without merit. The trial court did not inform the venire of the effect of a jury's failure <u>to answer the special issues</u>. Rather, the court told the panel members about the effect <u>of a guilty verdict</u>. These remarks therefore are unlike those this Court has previously found to violate article 37.071. For example, in **Clark v. State**, 881 S.W.2d 682, 691-92 (Tex. Crim. App. 1994), this Court found that the prosecutor improperly informed the venire that "[e]ven one no answer could result in a life sentence." In **Sattiewhite**, 786 S.W.2d at 277-78, this Court held that the trial court erred by informing the jury that the failure to answer the special issues results in a "hung jury, a mistrial." The questions presented in **Clark** and **Sattiewhite** fall squarely within the prohibition of article 37.071, section 2(a), because the prospective jurors were informed of the effect of the failure to answer the special issues.

The State has not found a case extending the rule of section 2(a) to cases in which the trial court informed the jury of the effect of a guilty verdict, rather than the effect of its failure to reach a punishment decision. Indeed, such an extension should not be made. The plain language of article 37.071, section 2(a) prohibits the trial judge and the parties from informing "a juror or a prospective juror of the effect of a failure of a jury to agree on issues submitted under Subsection (c) or (e) of this article." The literal text of article 37.071, section 2(a) thus does not bar the trial judge from telling the jury the effect of a guilty verdict. <u>See</u> **Moore v. State**, 868 S.W.2d 787, 790 (Tex. Crim. App. 1993); **Hernandez v. State**, 861 S.W.2d 908, 909 (Tex. Crim. App. 1993); **State v. Muller**, 829 S.W.2d 805, 808 (Tex. Crim.

jurors must unanimously determine that the State proved the issue beyond a reasonable doubt. (T. 220). There was no correspondence from the jury, nor any other indication in the record, revealing that the jury was confused by the charge. Thus, the jury is presumed to have followed the court's charge without difficulty. Finally, a review of the remainder of the voir dire of this venire panel reveals that there was no further mention of an automatic life sentence. As in **Sattiewhite** and **Clark**, appellant was not harmed by the alleged error.

Appellant raises this complaint for the first time on appeal, and thus did not preserve the issue by making a timely and specific trial objection. Furthermore, appellant's claim is without merit, because the trial court's remarks are distinguishable from the statements prohibited by article 37.071, section 2(a). The comments thus were permissible. Yet, even if the comments were made in error, appellant was not harmed by the remarks. His first point of error therefore should be overruled.

———•———

### REPLY TO APPELLANT'S SECOND AND SEVENTH POINTS OF ERROR

In two points of error, appellant claims the trial court erred by refusing to instruct the jury that appellant would have to serve a minimum of 35 years on a life sentence. Relying upon **Simmons v. South Carolina**, 114 S.Ct. 2187 (1994), he argues in his second point of error that the trial court violated the Due Process Clause of the United States Constitution by refusing to submit the requested charge. In his seventh point of error, appellant

rebut or explain. Appellant was not denied due process of law when the trial court refused to instruct the jury on parole. The trial court properly followed the Texas Constitutional commands in prohibiting parole from being considered by a capital jury.

**Smith**, slip op. at 21-22 (citations omitted).

As in **Smith**, no evidence or argument concerning appellant's parole eligibility was presented to the jury in this case. Consequently, the troubling aspects of **Simmons** are not present in this case, nor in any Texas capital murder trial where the legal due process safeguards have been followed. Because appellant received due process of law, there is no need to circumvent the mandate of the Texas Constitution. Accordingly, **Simmons** is inapplicable, and the trial court properly refused to instruct the jury on the issue of parole.

Moreover, this Court previously has rejected appellant's Eighth Amendment claim. In **Elliott v. State**, 858 S.W.2d 478, 489 (Tex. Crim. App. 1993), the appellant argued that the trial court's refusal to instruct the jury on the law of parole violated the Eighth Amendment of the United States Constitution. This Court rejected Elliott's contention. Relying upon **California v. Ramos**, 463 U.S. 992 (1983), this Court found that, while the federal constitution does not prohibit a parole charge, it does not require such a charge either. **Id.** at 489-90. Thus, a capital defendant's eligibility for parole does not raise a federal constitutional issue.

More recently, this Court followed **Elliot** when rejecting Smith's Eighth Amendment argument. **Smith**, slip op. at 23. "We note ... that the concept of parole eligibility 'bears no relationship to the nature of the offense or the character of the

protection than the United States Constitution; however, each argument must be developed independently of the other. **Elliott**, 858 S.W.2d at 487; **Muniz v. State**, 851 S.W.2d 238, 251 (Tex. Crim. App. 1993); **Heitman v. State**, 815 S.W.2d 681, 690-91 n.23 (Tex. Crim. App. 1991). Briefs claiming constitutional violations under the state and federal constitutions should provide argument, analysis, and authority supporting and explaining each separate claim of constitutional violation. **Arnold v. State**, 873 S.W.2d 27, 29 and 33 n.2 and n.4 (Tex. Crim. App. 1993), cert. denied, 115 S.Ct. 103 (1994); **McCambridge v. State**, 712 S.W.2d 499, 502 n.9 (Tex. Crim. App. 1986), cert. denied, 110 S.Ct. 1936 (1990). Because appellant has failed to meet these briefing requirements, he has presented nothing for review in his ninth point of error, and that claim should not be considered.

Appellant's eighth point of error, in which he alleges a Sixth Amendment violation, is without merit. In **King v. State**, 631 S.W.2d 486, 490 (Tex. Crim. App. 1982), this Court overruled appellant's contention that the trial court erred by refusing his request to voir dire the potential jurors on the length of time a capital murder convict must serve on a life sentence before becoming eligible for parole. The Fifth Circuit Court of Appeals later held in **King v. Lynaugh**, 850 F.2d 1055, 1060-61 (5th Cir. 1988), that voir dire on Texas parole law is not constitutionally required. The court wrote:

> We are further reluctant to require asymmetrical constitutional requirements for voir dire and the jury deliberations because of the Supreme Court's determination that a jury instruction on a capital defendant's eligibility for parole or commutation of sentence does not raise a constitutional issue.

683, 693 (Tex. Crim. App. 1990), cert. denied, 111 S.Ct. 1432 (1991); **Burns v. State**, 761 S.W.2d 353, 355-56 (Tex. Crim. app. 1988); **Keeton v. State**, 724 S.W.2d 58, 61 (Tex. Crim. App. 1987). When viewing the evidence in the light most favorable to the verdict, it is unimportant what specific testimony the jury relied upon in answering the special issues. The consideration on appeal is whether there is evidence in the record to support the jury's finding. Whether the jury actually relied upon all of the evidence presented at the punishment phase or merely a portion of that evidence is irrelevant. This Court simply views all the evidence in the light most favorable to the verdict. Contrary to appellant's argument, the well-settled standard of review for sufficiency claims provides this Court with a method for the meaningful review of the jury's punishment decisions. Accordingly, the third and fourth points of error should be overruled.

———◆———

## REPLY TO APPELLANT'S FIFTH AND SIXTH POINTS OF ERROR

In his next two points of error, appellant claims that TEX. CODE CRIM. P. ANN. art. 37.071, § 2(e) (Vernon Supp. 1995) is unconstitutional because the mitigating special issue is silent regarding the burden of proof. He further alleges that the trial court erred by refusing to instruct the jury that the State had the burden of proof with respect to the second special issue.

In instances where mitigating evidence is presented, all that is constitutionally required is a vehicle by which the jury is able to consider and give effect to the mitigating evidence relevant to

trial judge and the parties from telling the jury of the effect of
its failure to agree on the special issues. Appellant argues that
this provision violates both the Eighth Amendment and the
Fourteenth Amendment to the United States Constitution, as well as
Article I, Sections 10, 13, and 19 of the Texas Constitution.

Once again, appellant's state constitutional argument has been
inadequately briefed and presents nothing for review. Appellant
does nothing more than refer to his federal constitutional argument
and ask this Court to substitute "the authority of the above
referenced provisions of the Texas Constitution." (Appellant's
brief - 47). Because he has not provided argument, analysis, and
authority supporting and explaining his state constitutional claim,
appellant's eleventh point of error should not be considered.
**Arnold**, 873 S.W.2d at 29 and 33; **McCambridge**, 712 S.W.2d at 502.

Appellant's federal constitutional claim is well-settled
contrary to his position. In **Davis v. State**, 782 S.W.2d 211, 221-
22 (Tex. Crim. App. 1989), the appellant attacked the
constitutionality of article 37.071(e), which once contained the
language that has since been moved to article 37.071, § 2(a).
Claiming a violation of due process, Davis argued that the jury
should have been informed that their failure to agree on any of the
special issues would result in the imposition of a life sentence.
This Court disagreed, finding that article 37.071(e) does not
deprive capital defendants of due process. **Id.** at 222.

This Court followed **Davis** in **Sterling v. State**, 830 S.W.2d 114,
121-22 (Tex. Crim. App. 1992). Noting that Sterling had pointed
out no facts or circumstances which rendered the statute

of their individual answers." **Emery v. State**, 881 S.W.2d 702, 711 (Tex. Crim. App. 1994). This Court should follow its well-settled precedent and overruled appellant's tenth point of error.

———•———



January 8, 1997

Henry K. Oncken
13700 Veterans Memorial Dr
SUITE 140
Houston, TX   77014


RE: Case No. 71,863
    178TH DISTRICT COURT - 940320

Style: ELDRIDGE, GERALD CORNELIUS

Dear Counsel:

ORDER: The Appellant's pro se Motion for Extension of time to
file the Appellant's pro se Motion for Rehearing has been
granted.   The time for filing the Appellant's pro se Motion for
Rehearing has been extended to 2-6-97.



                    Sincerely yours,


                    Troy C. Bennett, Jr., Clerk

                    By _Louise Pearson_
                       Deputy


cc:  Judge Presiding
     Charles Bacarisse
     John B. Holmes

## III.

AT THE TIME THE MOTION FOR REHEARING WAS SCHEDULED, COUNSEL ADVISED APPELLANT THAT HE WILL NOT BE FILING A MOTION FOR REHEARING BECAUSE HE DID NOT THINK THERE WAS SUFFICIENT LEGAL REASON TO DO SO. COUNSEL IS NO LONGER WILLING TO CONTINUE REPRESENT APPELLANT, BECAUSE COUNSEL ADVISED HIM THAT HE (APPELLANT) CAN FILE A PRO-SE MOTION FOR REHEARING BY ADDRESSING IT TO THIS COURT. SEE LETTER OF HENRY K. ONCKEN TO APPELLANT (ATTACHED AS "ATTACHMENT 1").

## IV.

ON DECEMBER 11, 1996, THE APPELLANT FILED A PRO SE MOTION FOR APPOINTMENT OF COUNSEL IN THE 178TH CRIMINAL DISTRICT COURT OF HARRIS COUNTY, AND THE TRIAL COURT TOOK NO ACTION ON THIS PRO SE MOTION BUT RATHER THE TRIAL COURT FURTHER ORDERED THAT THE CLERK TO NOTIFY APPELLANT THAT ATTORNEY HENRY ONCKEN WILL BE APPOINTED TO REPRESENT HIM ON MOTION FOR REHEARING.[1]

## V.

A REASONABLE EXPLANATION OF THE NEED FOR AN EXTENSION TO FILE APPELLANT'S PRO-SE MOTION FOR REHEARING EXIST IN THAT APPELLANT SUBMITS THAT HE IS EXPRESSLY WAIVING HIS RIGHT

---

[1]APPELLANT NOTES HERE, HE DID NOT RECEIVE THE NOTICE FROM THE CLERK OF THE 178TH CRIMINAL DISTRICT COURT OF HARRIS COUNTY UNTIL DECEMBER 23, 1996. LIKEWISE, ATTORNEY HENRY ONCKEN WAS NOT APPOINTED BY THE TRIAL COURT UNTIL AFTER EXPIRATION OF 15 DAYS ALLOWED FOR FILING A MOTION FOR REHEARING. THUS APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY THE DELAY AND GOOD CAUSE EXISTS FOR ALLOWING HIM ADDITIONAL TIME TO FILE HIS PRO SE MOTION FOR REHEARING.

ALLOWED TO PLACE A LAW LIBRARY REQUEST AND ORDER FROM UP TO THE FIVE (5) LAW BOOKS, BUT THE ADEQUATENESS OF RECEIVING THE RIGHT ORDER OF LAW BOOKS IS VERY POOR, OR OTHERWISE THE LAW BOOKS ARE JUST NOT DELIVERED TO YOU.

## VII.

APPELLANT FURTHER SUBMITS THE ISSUES TO BE PRESENTED IN HIS PRO MOTION OF REHEARING ARE EXTREMELY IMPORTANT, WHICH POTENTIALLY AFFECTS NUMEROUS OTHER TEXAS DEATH ROW INMATES, PRESENT AND FUTURE, AND THUS SHOULD BE PROPERLY ADDRESSED BY THIS COURT. THUS APPELLANT WOULD LIKE TO HAVE MEANINGFUL OPPORTUNITY TO SUBMIT A PRO SE MOTION FOR REHEARING TO THIS COURT, WHICH I WILL NOT BE ABLE TO DO WITHOUT THE EXTENSION OF TIME I AM REQUESTING.

## VIII.

AN ADDITIONAL EXTENSION OF TIME FOR FILING APPELLANT'S PRO SE MOTION FOR REHEARING WILL NOT DELAY SUBMISSION OF THE REHEARING IN ITS PRESCRIBED ORDER, AND NOR HARM WILL RESULT TO THE APPELLEE AS A RESULT OF AN EXTENSION OF TIME FOR FILING THE PRO SE MOTION FOR REHEARING.

WHEREFORE, APPELLANT, GERALD C. ELDRIDGE, PRAYS THAT THE COURT ENTER AN ORDER EXTENDING THE DEADLINE FOR FILING OF HIS PRO SE MOTION FOR REHEARING BY 45 DAYS AND INCLUDING FEBRUARY 5, 1996.

RESPECTFULLY SUBMITTED,

*Gerald C. Eldridge*

GERALD C. ELDRIDGE
APPELLANT -- PRO SE
TDC No. 999055 /08
ELLIS ONE UNIT D/R
HUNTSVILLE, TEXAS 77343

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING SECOND REQUEST FOR EXTENSION OF TIME TO FILE MOTION FOR REHEARING HAS BEEN DULY SERVED UPON THE FOLLOWING LISTED PARTIES ON THIS _21_ DAY OF _December_ , 1996, BY DEPOSITING THE SAME, ENCLOSED IN A PROPERLY ADDRESSED ENVELOPE, FIRST-CLASS POSTAGE PREPAID, IN A POST OFFICE OR OFFICIAL DEPOSITORY, UNDER THE CARE AND CUSTODY OF THE UNITED STATES POSTAL SERVICE.

THE NAMES AND ADDRESSES OF THOSE SERVED ARE AS FOLLOWS:

o  HENRY K. ONCKEN
   ONCKEN & ONCKEN
   12907 VETERANS MEMORIAL DR.
   HOUSTON, TEXAS 77014

o  JOHN B. HOLMES, J.R
   DISTRICT ATTORNEY
   SUITE 200
   201 FANNIN STREET
   HOUSTON, TEXAS 77002

o  CHARLES BACARISSE
   HARRIS COUNTY DISTRICT CLERK
   P.O. BOX 4651
   HOUSTON, TEXAS 77210-4651

o  ROBERT HUTTASH
   STATE PROSECUTING ATTORNEY
   P.O. BOX 12405
   CAPITOL STATION
   AUSTIN, TEXAS, 78711

*Gerald C. Eldridge*

GERALD C. ELDRIDGE
APPELLANT -- PRO SE
TDC No. 999075/08
ELLIS ONE UNIT D/R
HUNTSVILLE, TEXAS 77343

GERALD C. ELDRIDGE
TDC No. 000108
ELLIS ONE UNIT D/R
HUNTSVILLE, TEXAS 77343

DECEMBER 23, 1996

HENRY K. ONCKEN
ONCKEN & ONCKEN, P.C.
12907 VETERANS MEMORIAL DR.
HOUSTON, TEXAS 77014

RE: APPEAL CAUSE No. 71,863 IN THE TEXAS COURT OF CRIMINAL APPEALS
TRIAL COURT CAUSE No. 9403201 IN THE 178TH DISTRICT COURT OF
HARRIS COUNTY, TEXAS.

DEAR MR. ONCKEN,

AS YOU ARE FULLY AWARE, AND THE RECORD IN THIS CAUSE
REFLECTS, I HAVE TIMELY FILED DOCUMENTS IN THE TEXAS COURT
OF CRIMINAL APPEALS TO OBTAIN EXTENSION OF TIME IN ORDER TO
FILE A PRO SE MOTION FOR REHEARING, AND I HAVE UNEQUIVOCALLY
INVOKED MY RIGHT TO SELF REPRESENTATION. THEREFORE, BY VIRTUE
OF THIS WRITING I NOT ONLY RELIEVE YOU FROM ANY FURTHER
INVOLVEMENT AND RESPONSIBILITY IN ALL PRESENT AND FUTURE
MATTERS CONNECTED WITH THIS (MY) CAUSE, AND ADVISE YOU THAT
YOU ARE DULY REMOVED FROM MY CAPITAL CASE, BUT REQUIRE YOU
TO FILE THE ENCLOSED MOTION TO WITHDRAW AS COUNSEL (OR THE
EQUIVALENT OF IT) WITH THE 178TH DISTRICT COURT OF HARRIS
COUNTY, AND TO RELINQUISH TO ME ANY AND ALL DOCUMENTS YOU
MIGHT HAVE PERTAINING TO MY CASE (RECORD, MOTIONS, PLEADINGS,
ORDERS, ECT.). NATURALLY, BECAUSE I HAVE A STATUTORY AND
CONSTITUTIONAL RIGHTS TO REPRESENT MYSELF, AND YOUR FAILURE
TO COMPLY WITH ANY OF MY WISHES, REQUESTS AND DEMANDS, AS
SET FORTH ABOVE, WOULD GIVE RAISE TO A MALPRACTICE LAW-SUIT,
I EXPECT YOUR COOPERATION IN THIS MATTER.

AS YOU CAN SAFELY ASSUME, I DO NOT HARBOR ANY
ILL-FEELINGS TOWARDS YOU, AND MY DECISION TO REMOVE YOU FROM
MY CASE IS BASED, PRIMARILY, ON THE BASIS OF WHAT YOU HAVE
DEMONSTRATED TO ME; THAT IS TO SAY, THAT YOU ARE RELUCTANT
TO GIVE AN ADEQUATE AND FULL CONSIDERATION TO MY CASE, AND
MY SINCERE THAT YOU WILL NOT GIVE ME THE EFFECTIVE
ASSISTANCE OF COUNSEL THAT I'AM ENTITLED TO.....

SINCERELY YOURS,

*Gerald C. Eldridge*

GERALD C. ELRIDGE

IN THE TEXAS COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS

GERALD C. ELDRIDGE          *
     APPELLANT          *
                     *
VS.                      *       CAUSE NO. <u>71, 863</u>
                     *
THE STATE OF TEXAS          *
     APPELLEE          *

## MOTION TO WITHDRAW AS COUNSEL OF RECORD

TO THE HONORABLE JUDGES OF SAID COURT:

NOW COMES HENRY K. ONCKEN, COURT-APPOINTED ATTORNEY OF RECORD FOR THE APPELLANT GERALD C. ELDRIDGE, AND MOVES THE COURT FOR LEAVE TO WITHDRAW AS COUNSEL IN THE ABOVE STYLED AND NUMBERED CAUSE.

APPELLANT DISMISSED HIS ATTORNEY OF RECORD BY LETTER DATED DECEMBER 23, 1996, WHICH IS ATTACHED HERETO AND INCORPORATED HEREIN AND IS SELF-EXPLANATORY.

RESPECTFULLY SUBMITTED,

HENRY K. ONCKEN
STATE BAR NO. 15280000

ONCKEN & ONCKEN, P.C.
12907 VETERANS MEMORIAL DR.
HOUSTON, TEXAS 77014
(713) 893-4747

_____

HENRY K. ONCKEN


"ATTACHMENT 3"

I am sorry to have been this long in getting the Opinion to you. I was out of town Friday the 22nd and Monday the 25th, and just saw it myself today. Let me know if you have any questions and I will be happy to try to answer them for you.

Sincerely,

Henry K. Oncken

HKO:jj
Enclosures

December 6, 1996

Henry K. Oncken
13700 Veterans Memorial Dr
SUITE 140
Houston, TX 77014

RE: Case No. 71,863
    178TH DISTRICT COURT - 940320

Style: ELDRIDGE, GERALD CORNELIUS

Dear Counsel:

ORDER: The Appellant's pro se Motion for Extension of time to
file the Appellant's pro se Motion for Rehearing has been
granted.  The time for filing the Appellant's pro se Motion for
Rehearing has been extended to 1-6-97.

                    Sincerely yours,

                    Troy C. Bennett, Jr., Clerk

                    By: _____
                        Deputy

cc:  Judge Presiding
     Charles Bacarisse
     John B. Holmes

the indictment. Thereafter, the jury answered the Special Issues submitted to them in the affirmative, and Appellant was sentenced by the trial court on April 19, 1994, to death by lethal injection. Notice of Appeal was timely given.

## II.

On November 20, 1996, this Court issued an Opinion rejecting each of the arguments made in Appellant's Brief and affirming his conviction and sentence. No request for extension of time to file a Motion for Rehearing has previously been filed with this Court, and Appellant's Motion for Rehearing is due to be filed on December 5, 1996.

## III.

Appellant cannot have his Motion for Rehearing prepared and filed by said date, because of the following reasons:

1. Appellant was represented at trial by Wayne Hill and Danise Crawford, by Henry K. Oncken on appeal. I was then and now without the means to retain counsel, and counsel who represented me on direct appeal is no longer able or willing to continue representing me. See Letter of Henry K. Oncken to Appellant (attached as Exhibit A).

2. Appellant does not have access to the assistance of counsel, and I lack the resources, training and knowledge to file a Motion for Rehearing without such assistance. In fact, an fellow death row convict has prepared this motion for me to file pro se, but he cannot provide me adequate legal aid, because of his commitments to other legal affairs.

Criminal Procedure requires the convicting courts to appoint counsel on direct appeal and apply for writ of certiorari, and any other appellate proceeding when the interest of justice requires representation. **TEX. CODE CRIM. PROC. ANN. art. 1.051, 26.05, 26.041, 26.052 (Vernon Supp. 1996).**

8. For the reasons stated above, Appellant respectfully prays that this request for Extension of Time be granted and that time for filing Appellant's Motion for Rehearing be extended to January 6, 1997.

Respectfully Submitted,

*Gerald C. Eldridge*

GERALD C. ELDRIDGE
Appellant - Pro Se
TDC No. #999108
Route 6
Ellis One Unit D/R
Huntsville, Texas 77343

# V E R I F I C A T I O N

I, GERALD C. ELDRIDGE, TDC No.: 999108, being presently incarcerated in the ELLIS ONE UNIT OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE - INSTITUTIONAL DIVISION, in WALKER COUNTY, TEXAS, verifies under the penalty of perjury that I'am the Appellant in the above styled cause; and, that I have read the foregoing Request for Extension of Time to File Motion for Rehearing; and, that each and every statement contained therein is within my personal knowledge and true and correct. Pursuant to Section 132.003 of the Texas Civil Practice and Remedies Code, and Title 28 U.S.C.A. § 1746.

Executed on this _27_ day of _November_ , 1996.


_Gerald C. Eldridge_
Gerald C. Eldridge
Appellant - pro se
TDC. No. 999, 108
Route 6
Ellis One Unit D/R
Huntsville, Texas 77343



Henry K. Oncken
Kirk J. Oncken
Rose Garcia Moriarty

———— • ————

Eino Zapata, P.C.
of Counsel

Oncken & Oncken, P.C.
Attorneys at Law

March 27, 1996

Gerald Eldridge
No. 999108
Ellis I Unit
Texas Department of Criminal Justice
Death Row
Huntsville, Texas  77343

　　　Re:  Case No. 71,863; Gerald Eldridge vs. The State of Texas;
　　　　　In the Court of Criminal Appeals of Texas

Dear Mr. Eldridge:

　　　I have been given the letter dated February 10, 1996, which
you wrote to Judge William Harmon concerning me and wish to point
some things out for you.

　　　Your first question deals with why I will not come to see you.
As I explained way back on April 24, 1994, the appeal of a criminal
case is much different than trial of that same case.  No witnesses
are called and there is no evidence presented to the Court of
Criminal Appeals.  An appeal is based solely on the record made at
the trial of the case.  I had that record, read every word of it
and raised every issue that could have been raised in the brief
filed on your behalf.  Since there was nothing to be presented in
the way of evidence to the Court of Criminal Appeals, other than a
review of the evidence presented in your trial, I did not need to
hear your version of the facts.  The attorneys who represented you
in your trial are very capable attorneys and we did talk to them
about the trial.  They are in a much better position to assist in
an appeal than you.

　　　Your second question deals with my not wanting you to call my
office.  The reason for that is that I am not going to run up a
large phone bill on collect telephone calls from persons
incarcerated.  Referring again to my letter to you dated April 24,
1994, you will note on page 3 of that letter that I told you not to
call my office **collect**, and asked you to write to me with any
questions you might have and I would do my best to answer those
questions.  Although my file does not contain a letter of
transmittal whereby I sent you a copy of the brief, my file does
reveal that on March 2, 1995, you wrote to me with certain
questions and in that letter you acknowledged you had received a
copy of the brief.  I received that letter on March 6, 1995, and I
wrote you back on March 24, 1995, answering your questions.  By
letter dated July 1, 1995, I furnished you a copy of the brief

Gerald C. Eldridge
Appellant - Pro Se
TDC No. 999,108
Route 6
Ellis One Unit D/R
Huntsville, Texas 77343

NOVEMBER 27, 1996

Troy C. Bennett, Jr., Clerk
Court of Criminal Appeals of Texas
Box 12308
Capitol Station
Austin, Texas 78711

Re: Gerald C. Eldridge Vs. The State of Texas
    Case No. 71, 863

    Dear Sir,

Please find enclosed herewith to be filed among the papers in the above referenced cause, the following Pro-Se Motion:

    1.  Request For Extension Of Time To File Motion For Rehearing.

I hereby respectfully request that you bring this motion to the Courts attention as soon as reasonably possible, and to give me notice of receive and filing of same.

Your assistance in this matter would be greatly appreciated. Thank You!

Very truly yours,

*Gerald C. Eldridge*

G.C Eldridge

cc:  Henry K. Oncken              John B. Holmes, J.r.
      ONCKEN & ONCKEN, P.C.     District Attorney
      12907 Veterans Memorial Dr.  Suite 200
      Houston, Texas 77014       201 Fannin Street
                                Houston, Texas 77002

      Honorable William T. Harmon
      Criminal Division
      719 Criminal Courts Bldg.,
      301 San Jacinto Street
      Houston, Texas 770022

*71863*

2-19-94
OK TO FILE
PC

NO. 71863

IN THE

COURT OF CRIMINAL APPEALS

FOR THE STATE OF TEXAS

GERALD C. ELDRIDGE
Appellant

VS.

THE STATE OF TEXAS

Appeal in Cause Number 9403201
In the 178th District Court
of Harris County, Texas

BRIEF FOR APPELLANT

HENRY K. ONCKEN
State Bar No. 15280000

ONCKEN & ONCKEN, P.C.
12907 Veterans Memorial Dr.
Houston, Texas   77014
(713) 893-4747

(On Appeal Only)

FILED IN
COURT OF CRIMINAL APPEALS

DEC 19 1994

Thomas Lowe, Clerk

Attorney for Appellant
GERALD C. ELDRIDGE

[APPELLANT REQUESTS ORAL ARGUMENT]

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| Names of all Parties . . . . . . . . . . . . . . . . . . . | i |
| Table of Contents  . . . . . . . . . . . . . . . | ii |
| Index of Authorities . . . . . . . . . . . . . . . | iii,iv |
| Preliminary Statement   . . . . . . . . . . . . . | v,iv |
| Statement of Facts . . . . . . . . . . . . . . . | vii,viii |
| Points of Error Presented  . . . . . . . . . . . | ix,x |
| Point of Error Number One  . . . . . . . . . . . | xi |
| Point of Error Number Two  . . . . . . . . . . . | xiv |
| Point of Error Number Three  . . . . . . . . . . | xxiv |
| Point of Error Number Four . . . . . . . . . . . | xxiv |
| Point of Error Number Five  . . . . . . . . . . | xxvii |
| Point of Error Number Six  . . . . . . . . . . . | xxvii |
| Point of Error Number Seven  . . . . . . . . . . | xxix |
| Point of Error Number Eight  . . . . . . . . . . | xxxvii |
| Point of Error Number Nine . . . . . . . . . . . | xl |
| Point of Error Number Ten  . . . . . . . . . . . | xli |
| Point of Error Number Eleven . . . . . . . . . . | xlvii |
| Prayer for Relief and Certificate of Service . . . . | xlviii |

Tex. Const., art. I, sec. 19. . . . . . . . . . . . . . . . . .45

V.T.C.A. Penal Code, §19.03(a) . . . . . . . . . . . . . . . .6

Vernon's Ann. C.C.P., Art. 37.071 §2(e) . . . . . . . . . . 25,26

Vernon's Ann. C.C.P., Art. 44.251 . . . . . . . . . . . . . . .26

Vernon's Ann. C.C.P., Art. 37.071 . . . . . . . . . . 28,29,40,45

Vernon's Ann. C.C.P. Art. 42.18 . . . . . . . . . . . . . . . .33

Vernon's Ann. C.C.P., art. 37.071, §2(g) . . . . . . . . . . 40,41

Vernon's Ann. C.C.P., Art. 37.071, §2(d)(2) . . . . . . . . 40,43

Vernon's Ann. C.C.P., Art. 37.071, §2(f)(2) . . . . . . . . . .43

Vernon's Ann. C.C.P., art. 37.071, §2(b) . . . . . . . . . . .40

Vernon's Ann. C.C.P., Art. 37.071, §2(a) . . . . . . . . .13,41,45

1994. (T-257). On April 19, 1994 the jury affirmatively answered special issue number one. The jury then answered no to special issue number two, and appellant was thereafter sentenced to death by the court. (T-258).

On April 19, 1994 the undersigned counsel was appointed to represent the appellant on appeal. (T-258).

stairway outside of her friend's apartment.  According to
eyewitness Kenneth Weaver, appellant then shot Cynthia Bogany in
the head as she lay begging for her life.  Appellant then fled the
scene, but subsequently turned himself into the police.

### POINT OF ERROR NUMBER SEVEN

THE TRIAL COURT ERRED IN FAILING TO INSTRUCT THE JURY CONCERNING THE PAROLE IMPLICATIONS OF A LIFE SENTENCE, THUS VIOLATING THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

### POINT OF ERROR NUMBER EIGHT

THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S REQUEST TO VOIR DIRE POTENTIAL JURORS ON THE RAMIFICATIONS OF THE PAROLE LAW AND THE FACT THAT IF GIVEN A LIFE SENTENCE THAT APPELLANT WOULD HAVE TO SERVE A MINIMUM OF THIRTY-FIVE YEARS PRIOR TO BECOMING ELIGIBLE FOR PAROLE, THUS VIOLATING THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

### POINT OF ERROR NUMBER NINE

THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S REQUEST TO VOIR DIRE POTENTIAL JURORS ON THE RAMIFICATIONS OF THE PAROLE LAW AND THE FACT THAT IF GIVEN A LIFE SENTENCE THAT APPELLANT WOULD HAVE TO SERVE A MINIMUM OF THIRTY-FIVE YEARS PRIOR TO BECOMING ELIGIBLE FOR PAROLE, THUS VIOLATING ARTICLE I SECTION TEN OF THE TEXAS CONSTITUTION.

### POINT OF ERROR NUMBER TEN

THE TRIAL COURT ERRED IN RENDERING JUDGMENT ASSESSING THE DEATH PENALTY AGAINST APPELLANT BECAUSE THE PUNISHMENT VERDICT OF THE JURY WAS RENDERED PURSUANT TO ARTICLE 37.071, §2(a) OF THE TEXAS CODE OF CRIMINAL PROCEDURE AND SAID ARTICLE IS UNCONSTITUTIONAL BECAUSE IT ALLOWS THE TRIAL COURT, THROUGH ITS INSTRUCTIONS, TO MISLEAD THE JURY REGARDING THE EFFECT OF A "NO" VOTE BY A SINGLE JUROR IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

### POINT OF ERROR NUMBER ELEVEN

THE TRIAL COURT ERRED IN RENDERING JUDGMENT ASSESSING THE DEATH PENALTY AGAINST APPELLANT BECAUSE THE PUNISHMENT VERDICT OF THE JURY WAS RENDERED PURSUANT TO ARTICLE 37.071, §2(A) OF THE TEXAS CODE OF CRIMINAL PROCEDURE AND SAID ARTICLE IS UNCONSTITUTIONAL BECAUSE IT ALLOWS THE TRIAL COURT, THROUGH ITS INSTRUCTIONS, TO MISLEAD THE JURY REGARDING THE EFFECT OF A "NO" VOTE BY A SINGLE JUROR IN VIOLATION OF ARTICLE I, SECTIONS TEN, NINETEEN, AND THIRTEEN OF THE TEXAS CONSTITUTION.

special issues submitted to it on the issue of punishment which violated **Vernon's Ann. C.C.P., Art. 37.071(2)(a)**. (R. X-106-107). The court denied the request. (R. X-107).

Argument and Authority

**Vernon's Ann. C.C.P., Art. 37.071(2)(a)** provides, in part, that; "The court, the attorney representing the state, the defendant, or the defendant's counsel <u>may not</u> inform a juror or a prospective juror of the effect of a failure of a jury to agree on issues submitted under Subsection (c) (sic) or (e) of this article." The statute appears to be a mandatory prohibition against informing prospective jurors of the effect of such a failure in any manner.

Appellant submits that the court's statement to the venire was an indirect comment that in the event the jury was unable to answer the special issues submitted to it the result would be an automatic life sentence. Consequently, pursuant to the statute, the court should have quashed the panel when requested to do so by appellant. Instead, however, the court continued with the individual voir dire of the members of that panel, and in fact seated four jurors from that panel. They are: Robert Allen Carpenter (R. X-184), Jan Hogan Green (R. X-341), Clarence Pickens (R. XI-475), and Alba Purifoy (R. XII-769). Since four of the prospective jurors from the panel who were informed of the consequences of the jury's failure to agree on answers to the special issues were actually impaneled on the jury and heard the case against appellant, the error of the court should be determined to be reversible. Appellant should

xii

# POINT OF ERROR NUMBER TWO

THE TRIAL COURT VIOLATED THE DUE PROCESS MANDATE OF **SIMMONS V. SOUTH CAROLINA**, AND THUS THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION, WHEN IT INSTRUCTED THE JURY TO ASSESS APPELLANT'S FUTURE DANGEROUSNESS WITHOUT CONSIDERING THE FACT THAT APPELLANT WOULD BE PAROLE INELIGIBLE FOR THIRTY-FIVE YEARS IF HE WAS SENTENCED TO LIFE IN PRISON AT THE PUNISHMENT STAGE OF THE PROCEEDINGS.

## Factual Background

Prior to the beginning of trial appellant filed a Motion to Voir Dire on Parole Law - 35 Year Minimum in which he stated that the jury had the right to know about the applicability of the parole laws to himself in answering the special issues submitted at the punishment stage of the trial. (T-169). This Motion was denied by the trial court. (T-171). At the same time the state filed a Motion in Limine requesting that the court order appellant not to mention the fact that appellant would be eligible for parole after serving 35 calendar years if sentenced to life imprisonment. (T-132). This Motion was granted by the court. (T-133). Consequently, appellant was precluded from mentioning the period of parole ineligibility applicable to him in front of the jury.

Subsequently, during the voir dire stage of the proceedings, in response to several questions from prospective jurors about what constituted a life sentence, the following colloquies occurred:

Court:    A life sentence in the context of a capital murder case means he does not receive the death penalty. That's what it means in the context of a capital murder case.   He gets a life sentence the minute he is found guilty. That's automatic, that's automatic, and only if the State can prove beyond a reasonable doubt that the answer to issue number one should be yes and they prove that the answer to issue number two should be no, only then does the defendant receive the death penalty. If they cannot prove it, he has got that automatic life

sentence means this: It means he does not receive the death penalty, because we only have two punishments.

Ms. Crawford: At this time we reurge our objection under 37.071.

Court: All right, overruled. Means he does not receive the death penalty because we only have two punishments, so a life sentence means we don't think this guy should deserve the death penalty. That may not be an appropriate answer to your question.

Juror: It's not.

Court: But that's the answer.... (R. XXIV-2613).

During the voir dire, appellant again requested that the court allow him to inform the jury of the true meaning of life as it relates to capital murder cases because of all of the questions by prospective jurors on the matter. (R. XVIII-1585-1587). Again, the court denied the request. (R. XVIII-1587).

Finally, appellant submitted to the court for inclusion in its charge to the jury an instruction on the applicability of the parole laws to appellant, and the fact that if given a life sentence he would have to serve a minimum of thirty-five years in prison on a day to day basis before being considered for parole. (R. XXXIV-389);(T-207). The instruction was denied by the court. (R. XXXIV-389). At the same time appellant objected to the court's failure to include a reference in the parole paragraph that the jury was not to speculate as to whether parole applies to an individual serving a life sentence for the offense of capital murder. (R. XXXIV-388-389).[1] Thereafter, the court submitted a

---

[1] Appellant did not have to make any objection to the court's charge or request a different instruction to preserve his **Simmons** claim for appellate review because it would have been futile to

United States Constitution requires that the defendant be given an opportunity to inform the sentencing jury that he is parole ineligible, or parole ineligible for a particularly lengthy period of time. "In assessing future dangerousness, the actual duration of the defendant's prison sentence is indisputably relevant." **Simmons** at 2193. "Holding all other factors constant, it is entirely reasonable for a sentencing jury to view a defendant who is eligible for parole as a greater threat to society than a defendant who is not. Indeed, there may be no greater assurance of a defendant's future nondangerousness to the public than the fact that he never will be released on parole. The trial court's refusal to apprise the jury of information so crucial to its sentencing determination, particularly when the prosecution alluded to the defendant's future dangerousness in its argument to the jury, cannot be reconciled with our well-established precedents interpreting the Due Process Clause." **Id**. at 2194.(emphasis added).

There can be little doubt from the facts of this case that the jury could have reasonably concluded that appellant would someday be released from prison if he were given a life sentence by the jury. In the instant case, not only did the court's charge imply that parole was a "possibility" should appellant receive a life sentence, i.e. " you are not to consider or discuss any **possible** action..." (T-222)(emphasis added), but the prosecutor's argument to the jury also made it very clear that if given a life sentence appellant would someday be paroled, to wit;

"The defense lawyers talked about Terrell and to think of Terrell. And sure, think about Terrell. This little boy

**xviii**

years.  In that same discussion more than 75 percent of those surveyed indicated that if they were called upon to make a capital-sentencing decision as jurors, the amount of time the convicted murderer actually would have to spend in prison would be an "extremely important" or a "very important" factor in choosing between life and death.  This conclusion is strengthened by additional research demonstrating that jurors often carry distorted perceptions of parole eligibility into the jury room, and that those misperceptions can "shift the balance" and result in the imposition of death. **See** Bowers, **Capital Punishment & Contemporary Values: People's Misgivings and the Court's Misperceptions**, 27 Law and Soc. Rev. 157 (1993) (summarizing recent survey data from Florida, Georgia, Nebraska, New York, and South Carolina, and concluding that "both citizen and juror grossly underestimate the time that will usually be served by murderers not sentenced to death"); Paduano & Stafford Smith, **Deadly Errors: Juror Misperceptions Concerning Parole in the Imposition of the Death Penalty**, 18 Col. Human Rights L. Rev. 211, 222 n.33 (1987) (randomly selected capital jury veniremen in Cobb County, Georgia, believed, on average, that "life sentence" meant imprisonment for 8.1 years), **id**. at 223-225 n.35 (summarizing results of county-wide survey in Georgia and of jury venire survey in Mississippi that both showed that estimates of anticipated "life sentence" duration averaged ten years or less); Hood, III, **The Meaning of "Life" for Virginia Jurors and Its Effect on Reliability in Capital Sentencing**, 75 Va. L. Rev. 1605, 1624 n.101 (1989) (median estimate

threat to society as a whole if he were to be confined to the penitentiary for the rest of his life or for a substantial portion of his life.

It is by no means an unrealistic stretch of the imagination that a sentencing jury is far more concerned about "free citizen" society than it is about "inmate" society in making a determination as to special issue number one. This was readily apparent by the voir dire questions of the jury panels in the present case. But, if in fact, a sentencing jury is to consider all aspects of society, both "free citizen" and "inmate" in making a determination of whether a capital defendant is a continuing threat to society as a whole, as it is bound to do under the law, then depriving that jury of the opportunity to consider all of the truthful information available on the question of a capital defendant's release back into "free citizen" society does not comport with principles of Due Process.

Since the prosecutor argued that the jury should consider appellant's threat to society as a whole, instead of limiting it to "inmate" society (R. XXXIV-438-439), in addition to the fact that appellant would someday be released from prison if given a life sentence, the jury should have been informed of the true meaning of a life sentence rather than left to speculate as to the actual amount of time appellant would be required to remain in prison before becoming eligible for parole. The same can be said with regard to the court's actual charge on parole to the jury as well. The charge (quoted above) actually informed the jury that parole

## POINT OF ERROR NUMBER THREE

VERNON'S ANN. C.C.P., ART. 37.071, §2(E) IS FACIALLY UNCONSTITUTIONAL UNDER THE EIGHT AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN INTERPRETED IN CONJUNCTION WITH VERNON'S ANN. C.C.P. ART. 44.251(A).

## POINT OF ERROR NUMBER FOUR

THE TRIAL COURT'S INSTRUCTIONS ON THE SPECIAL ISSUE MANDATED BY VERNON'S ANN. C.C.P., ART. 37.071 §2(E) MAKES MEANINGFUL APPELLATE REVIEW OF THE SUFFICIENCY OF THE EVIDENCE SUPPORTING A NEGATIVE RESPONSE TO THAT SPECIAL ISSUE IMPOSSIBLE.

Because these two points of error raise similar issues, they will be briefed together.[2]

Amended **Vernon's Ann. C.C.P., Art. 37.071 §2(e)** is the statutory codification of the "Penry" special issue espoused in the case of **Penry v. Lynaugh**, 109 S.Ct. 2934 (1989). This issue is the pivotal issue in Texas capital cases for offenses committed on or after September 1, 1991, yet it does not specify the types of mitigating (or aggravating) factors relevant to a capital sentencing jury's deliberations during the punishment stage. Rather, the jury is simply asked to determine whether there is a "sufficient mitigating circumstance or circumstances" to warrant a life sentence rather than a death sentence.

Appellant submits that Texas' capital sentencing scheme is unconstitutional because it does not permit meaningful appellate review of the sufficiency of the evidence supporting a negative response to the §2(e) special issue as required by **Vernon's Ann.**

---

[2] Appellant believes that this claim was adequately preserved at trial. (T-153) Trial court denying appellant's claim that Texas death penalty statute does not provide for "meaningful appellate review." Furthermore, because it concerns this Court's sufficiency review, it could properly be raised for the first time on appeal.

The Supreme Court has recognized that an appellate court is in a virtually impossible position to review a jury's consideration of mitigating and aggravating evidence without knowing which factors the jury in fact considered. **Sawyer v. Whitley**, 112 S.Ct. 2514, 2522-23 (1992). Consequently, the Texas capital sentencing statute is unconstitutional under the Eighth and Fourteenth Amendments to the United States Constitution, and since appellant's punishment was predicated upon such statute his conviction must be reversed.

burdens of proof" during capital sentencing phase cannot "lessen the State's burden ... to prove the existence of aggravating factors").

Art. 37.071 is also silent as to which party has the burden regarding the sufficiency of the mitigating circumstances which warrant the imposition of a life sentence. Must the defense prove beyond a reasonable doubt that there is a sufficient mitigating circumstance to warrant a life sentence? Must the defense prove same by clear and convincing evidence? Or, must the defense merely prove by a preponderance that the accused should not die? Or, does the State have the burden to disprove the sufficiency of the mitigating circumstances? The statute provides jurors with absolutely no guidance in answering these questions. Consequently, the capital sentencing scheme under which appellant was sentenced violates the Eighth Amendment principles announced by the Supreme Court in **Furman v. Georgia**, 408 U.S. 238 (1972).

Accordingly, appellant's conviction should be reversed and his case remanded for a new trial.

Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability in the determination that death is the appropriate punishment in any capital case." **Johnson v. Mississippi**, 486 U.S. 578, 584 (1988). The withholding of information concerning a capital defendant's lengthy parole ineligibility from the jury which must assess whether he poses a "continuing threat to society" offends this principle. By denying the jury such information, the trial court impermissibly creates a needless and substantial risk that the jury will impose the death penalty simply to eliminate the possibility that the accused will be released on parole after a relatively brief incarceration.

This conclusion is strengthened by research demonstrating that jurors often carry distorted perceptions of parole eligibility into the jury room, and that those misperceptions can "shift the balance" and result in the imposition of death. **See** Bowers, **Capital Punishment & Contemporary Values: People's Misgivings and the Court's Misperceptions**, 27 Law and Soc. Rev. 157 (1993) (summarizing recent survey data from Florida, Georgia, Nebraska, New York, and South Carolina, and concluding that "both citizen and juror grossly underestimate the time that will usually be served by murderers not sentenced to death"); Paduano & Stafford Smith, **Deadly Errors: Juror Misperceptions Concerning Parole in the Imposition of the Death Penalty**, 18 Col. Human Rights L. Rev. 211, 222 n.33 (1987) (randomly selected capital jury veniremen in Cobb County, Georgia, believed, on average, that "life sentence" meant imprisonment for 8.1 years), **id**. at 223-225 n.35 (summarizing

a defendant shall live or die." .... That same need for heightened reliability also mandates recognition of a capital defendant's right to require instructions on the meaning of the legal terms used to describe the sentences (or sentencing recommendations) a jury is required to consider, in making the reasoned moral choice between sentencing alternatives. Thus, whenever there is a reasonable likelihood that a juror will misunderstand a sentencing term, a defendant may demand instruction on its meaning, and a death sentence following the refusal of such a request should be vacated as having been "arbitrarily or capriciously" and "wantonly and ... freakishly imposed." **Id.** at 2198. (Souter and Stevens, JJ., concurring). Justice Souter went on to conclude that "on matters of law, arguments of counsel do not effectively substitute for statements by the court.... Because juries in general are likely to misunderstand the meaning of the term 'life imprisonment' in a given context, the judge must tell the jury what the term means, when the defendant so requests." **Id.** at 2199.

By withholding information about parole eligibility found in **Vernon's Ann. C.C.P. Art. 42.18**, the Trial Court, in the instant case, permitted the jury to sentence appellant while laboring under an immediate fear resulting from a misperception that appellant would not serve a lengthy sentence should they decide to give him life in prison rather that death. It would defy logic to suppose that a jury entrusted with the determination of appellant's "future dangerousness" would be unaffected by the possibility of his being released at some point in the near future.

because without it the jury could not accurately assess the weight to be accorded appellant's mitigating evidence, the absence of an accurate instruction on parole eligibility violated the well-established Eighth Amendment requirement that a capital sentencing jury consider "any relevant circumstances that could cause it to decline to impose the death penalty... and any relevant information offered by the defendant." **McClesky v. Kemp**, 481 U.S. 279, 306 (1987).

This Eighth Amendment justification for vacating appellant's sentence does not depend on whether the fact of his lengthy sentence before parole eligibility is itself held to be a relevant mitigating factor. Rather, it is sufficient that the withholding of this vital information substantially impaired the jury's ability to assess the significance of other, indisputably relevant mitigating evidence. Although states may provide a framework for the jury's consideration of mitigating factors, **Franklin v. Lynaugh**, 487 U.S. 164, 179 (1988), there is no permissible state interest in constructing a framework which misleads the jury by minimizing the accused's case for life. Withholding the simple truth that appellant would have to serve at least thirty-five years in prison before even becoming eligible for release on parole did exactly that.

Just as compelling as the foregoing argument for the inclusion of parole instructions is the argument that the absence of said instructions also gives undue weight to the prosecution's evidence offered in the form of penitentiary papers and judgments which