# United States District Court
# Southern District of Texas

## Case Number: 05CV1847

## ATTACHMENT

Description:

☐ State Court Record      ☑ State Court Record Continued

☐ Administrative Record

☑ Document continued - Part __4__ of _____

☐ Exhibit to: _____

        number(s) / letter(s) _____

Other: _____

_____

_____

remanded for a new trial.

a capital murder prosecution.

In its recent decision in the case of **Simmons v. South Carolina**, 114 S.Ct. 2187 (1994), the Supreme Court of the United States held that in assessing future dangerousness, the actual duration of the defendant's prison sentence is indisputably relevant. **Id.** at 2194. Furthermore, in the case of **Skipper v. South Carolina**, 106 S.Ct. 1669 (1986), the Supreme Court held that when the prosecution relies on future dangerousness as justification for imposition of the death penalty, due process requires that the defendant be given an opportunity to present evidence in rebuttal. Both cases leave little room for doubt that truthful and accurate information regarding the actual duration of a capital defendant's parole ineligiblity is relevant in a capital murder prosecution, especially considering the fact that in Texas a capital defendant's future dangerousness is stautorily required to be considered by the sentencing jury in determining the proper sentence to be imposed.[5]

In his Motion, appellant stated four specific questions which he wanted to discuss with prospective jurors concerning their views on how parole ineligibility would affect their punishment deliberations. (T-170). These questions were not duplicious of any subject matter previously discussed with the jury, nor do they appear to encompass a subject which would have consumed an inordinate amount of the court's time. Armed with the responses of the individual jurors on the subject of parole ineligibility,

---

[5] See Tex. Code Crim. Por. Art. 37.071 §2(b)(1).

## POINT OF ERROR NUMBER NINE

THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S REQUEST TO VOIR DIRE POTENTIAL JURORS ON THE RAMIFICATIONS OF THE PAROLE LAW AND THE FACT THAT IF GIVEN A LIFE SENTENCE THAT APPELLANT WOULD HAVE TO SERVE A MINIMUM OF THIRTY-FIVE YEARS PRIOR TO BECOMING ELIGIBLE FOR PAROLE, THUS VIOLATING ARTICLE I SECTION TEN OF THE TEXAS CONSTITUTION.

### Factual Background

The discussion contained in Point of Error Eight at page 37 is specifically incorporated by reference herein.

### Argument and Authority

The argument advanced in Point of Error Eight at pages 37 through 39 is specifically incorporated by reference herein. However, the authority in support of the argument advanced in Point of Error Eight is replaced herein by the authority of the above referenced provisions of the Texas Constitution.

denied by the trial court. (T-156).

## Argument and Authority

**Vernon's Ann. C.C.P., art. 37.071, §2(g)**, provides that if a jury is unable to answer any issue submitted under section 2(b) or 2(e), the trial court shall sentence the defendant to life in the Institutional Division of the Texas Department of Corrections. This section precludes the imposition of a death sentence if even one "no" vote is cast, and requires the automatic imposition of a life sentence in such a case.

**Vernon's Ann. C.C.P., art. 37.071, §2(d)(2)** requires that the trial court charge the jury that it can not answer any issue submitted under **Vernon's Ann. C.C.P., art. 37.071, §2(b)** "yes" unless it agrees unanimously; <u>and can not answer any issue "no" unless 10 or more jurors agree.</u> (emphasis added). Likewise, section 2(f)(2) requires that the trial court charge the jury that it can not answer any issue submitted under section 2(e) "no" unless it agrees unanimously; <u>and can not answer the issue "yes" unless 10 or more jurors agree.</u> (emphasis added).

At the same time, **Vernon's Ann. C.C.P., Art. 37.071, §2(a)** provides that:

> The court, the attorney representing the state, the defendant, or the defendant's counsel may not inform a juror or a prospective juror of the effect of a failure of a jury to agree on issues submitted under Subsection (c)(sic) or (e) of this article.

Contrary to **Vernon's Ann. C.C.P., Art. 37.071 §2(g)** the instruction given in this case created the appearance of a need for a ten person majority before the jury could answer Special Issue

before death penalty dissenters could register their convictions, the court effectively mislead those dissenters and removed them from the deliberative process at the punishment hearing in violation of the Fourteenth Amendment. At best, the instructions in this case informed any pro-life juror that by continuing to vote his or her conscience he or she would force a mistrial, at worst, the instructions forced such jurors to conclude that their view of the evidence was irrelevant unless they persuaded nine other jurors to vote "no" as well. Thus, jurors in the majority were not only free to pressure any dissenter with these arguments, but were encouraged to do so by the court's instructions. This impermissibly denied appellant his right to a fair determination of punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

Appellant anticipates that the State will rely upon this Court's decision in **Davis v. State**, 782 S.W.2d 211 (Tex.Crim.App. 1989) as authority for its position that this Court should overrule this point of error. However, appellant respectfully urges this Court to reevaluate its decision in **Davis**, for the following reasons.

In **Davis**, this Court cited the United States Supreme Court holding in **Caldwell**, supra, for the proposition that any information that is given the jury which may be interpreted by it as relieving its responsibility to determine the life or death of an accused is an invasion of the jury's fact finding function and improper. This Court also cited one Federal District appellate

juror who is part of that decision making process. Furthermore, informing the jury of the effect of a single "No" vote does not relieve "the jury" of its responsibility to decide between life and death as the **Davis** Court seems to assume by application of a comment from the **Caldwell** decision, but instead encourages the rational exchange of viewpoints on the evidence in a situation where a single juror may be struggling with his or her decision. What the holding in **Caldwell** seems to ignore is the oftentimes lengthy and tedious process of selecting jurors who can make a life and death decision based solely on the evidence rather than on his or her personal feelings about the death penalty, and that what you end up with are jurors who do not have the expectation that there will be some avenue available to them by which to avoid assessing the death penalty.

Because the Eighth and Fourteenth Amendments to the United State Constitution prohibit a punishment hearing in a capital murder trial at which each individual juror is precluded from exercising his or her own reasoned opinion, and because the version of Article 37.071 of the Texas Code of Criminal Procedure applicable in appellant's trial violates that prohibition it is unconstitutional. For these reasons reversible error is presented.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, for the foregoing reasons, appellant prays that this Honorable Court reverse the conviction and order the cause be remanded for a new trial.

Respectfully submitted

Henry K. Oncken
State Bar No. 15280000

Oncken & Oncken, P.C.
6810 FM 1960 West
Houston, Texas 77069
(713) 893-4747
Fax No. (713) 893-5265

Attorney for Appellant
GERALD C. ELDRIDGE

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief for Appellant has been furnished to Robert Huttash, State Prosecuting Attorney, P.O. Box 12405, Capital Station, Austin, Texas 78711 and Calvin Hartmann, Assistant District Attorney, 201 Fannin Street, Houston, Texas 77002, by United States certified mail with return receipt requested, on the *16th* day of *December*, 1994.

Henry K. Oncken

# M A N D A T E

## F R O M

## COURT OF CRIMINAL APEALS

### Austin, Texas

**THE STATE OF TEXAS,**

**TO THE   178TH. JUDICIAL DISTRICT COURT OF HARRIS   COUNTY - GREETINGS:**

Before our COURT OF CRIMINAL APPEALS, on the 19th. day of March A.D. 1997 the cause upon appeal to revise or reverse your Judgment between

### GERALD CORNELIUS ELDRIDGE

### VS.

### THE STATE OF TEXAS

CCRA No. 71,863

Tr. Ct. No. 9403201

was determined: and therein our said COURT OF CRIMINAL APPEALS made it's order in these words:

"This cause came on to be heard on the transcript of the record of the Court below, and the same being considered, because it is the Opinion of this Court that there was no error in the judgment, it is **ORDERED, ADJUDGED AND DECREED** by the Court that the judgment be **AFFIRMED**, in accordance with the Opinion of this Court, and that the appellant pay all costs in this behalf expended, and that this Decision be certified below for observance."

The Appellant's Motion for Rehearing is Denied.

**WHEREFORE,** We command you to observe the Order of our said **COURT OF CRIMINAL APPEALS** in this behalf and in all things have it duly recognized, obeyed and executed.

WITNESS, THE HONORABLE MICHAEL J. McCORMICK, Presiding Judge

of our said **COURT OF CRIMINAL APPEALS**, with the Seal thereof

annexed, at the City of Austin,

this 4th. day of April A.D. 1997.

TROY C. BENNETT, JR.

*Belva Nyler*

Clerk

Deputy Clerk

GERALD CORNELIUS ELDRIDGE, Appellant

NO. 71,863          v. - - - -     Appeal from HARRIS County

THE STATE OF TEXAS, Appellee

OPINION

Appellant was convicted of the offense of capital murder. The indictment charged that appellant killed Chirissa Bogany while committing the felony of burglary of a habitation owned by Cynthia Bogany, see V.T.C.A. Penal Code §19.03(a)(2), and alternatively, that he killed Chirissa and Cynthia Bogany during the same criminal transaction and/or scheme or course of conduct, see V.T.C.A. Penal Code §19.03(a)(7)(A) and (B). All three theories were submitted to the jury, which found appellant guilty in a general verdict. At punishment, the jury answered the first special issue affirmatively and the second in the negative. Punishment was assessed accordingly at death. Article 37.071(b) and (e), V.A.C.C.P.[1] Appeal to this Court is automatic. Article 37.071(h). Appellant raises eleven points of error, all relating to the special issues at the punishment phase of the trial. He does not challenge the sufficiency of the evidence at either phase of trial. We will affirm.

Briefly, the evidence established that around 5:00 a.m. on the morning of January 4, 1993, appellant went to the apartment of Cynthia Bogany, his ex-girlfriend and mother of his son Terrell. Appellant kicked in the door and shot Cynthia's daughter, Chirissa Bogany, at point blank range between the eyes, killing her instantly. After then shooting at Wayne Dotson and shooting Terrell Bogany at close range,[2] he chased Cynthia Bogany, who had fled the apartment. Appellant caught Cynthia when she tripped and fell on some stairs outside a neighbor's apartment. Despite Cynthia's pleas for her life, appellant shot her twice in the side of the head, also killing her instantly.

In his first point of error, appellant contends that the trial court erred in informing members of one of the venire panels that

---

[1] Unless otherwise indicated, all references to articles are to those in the Texas Code of Criminal Procedure.

[2] Terrell survived.

at 279. The record shows no communication between the jury and the court during the jury's deliberations at punishment. _Id_. Nor does appellant allude to any further mention during voir dire or else-where in the trial of other inappropriate comments by the court or any party to the proceeding. Given the existence in this cause of the same circumstances as those that led the Court in Sattiewhite and Clark to find harmlessness, and given the unlikelihood the pan-el members would actually have calculated the consequences of a hung jury at punishment from the trial court's comments, we con-clude that any resulting harm was attenuated. Accordingly, we hold that the trial court's error, if any, did not contribute to the punishment verdict beyond a reasonable doubt.[6] Tex.R.App.P., Rule 81(b)(2); Sattiewhite, 786 S.W.2d at 279. Appellant's first point of error is overruled.

In his tenth point of error, appellant alleges that the trial court violated the Eighth and Fourteenth Amendments to the United States Constitution by failing to instruct the jury that a "no" vote by a single jury member would result in a life sentence in-stead of death despite the statutory requirement of 10 votes for a "no" answer to Article 37.071 §2(b)(1) or for a "yes" vote to Article 37.071 §2(e). In his eleventh point of error, appellant argues that the same failure also violates Article I, §§ 10, 13, and 19 of the Texas Constitution. We reject both of these argu-ments.

We have consistently upheld the constitutionality of Article 37.071(2)(a) against the challenge that appellant raises in his tenth point of error. Draughon v. State, 831 S.W.2d 331, 337-8 (Tex.Cr.App. 1992); Emery v. State, 881 S.W.2d 702, 711 (Tex.Cr. App. 1994). We continue to believe that there is "nothing in the

---

[6]     Indeed, it would seem that the alleged violation here would only hurt the State. As appellant alleges in points of error ten and eleven, a "no" holdout juror on the first special issue or a "yes" holdout juror on the second special issue, knowing of the automatic life sentence in the absence of twelve "yes" votes on the first special issue or ten "no" votes on the second, would feel empowered to continue holding out for a life sentence.

at 853; see also Broxton v. State, 909 S.W.2d 912, 918-9 (Tex.Cr. App. 1995) (adopting for the Court the plurality's holding in Smith as to both Eighth and Fourteenth Amendments).

Even under the most charitable view, a requirement that trial courts inform juries of the parole consequences of a life sentence would obtain only if a defendant has shown other evidence that, in combination with parole eligibility, tends to show that a capital defendant will not be a future danger to society. Willingham v. State, 897 S.W.2d 351, 359 (Tex.Cr.App. 1995) (Clinton, J., concurring). Without more, evidence of parole eligibility is not relevant to future dangerousness. In the instant case, appellant's trial counsel did not offer any evidence that, in combination with minimum parole eligibility, would tend to show that appellant or people like him and in his position will not "commit criminal acts of violence that would pose a continuing threat to society." Article 37.071, §2(b)(1). Appellant's second and seventh points of error are overruled.

For these same reasons, we reject appellant's eighth and ninth points of error. In his eighth point of error, appellant argues that the trial court violated the Sixth Amendment to the United States' Constitution by prohibiting appellant's trial counsel from asking questions concerning parole eligibility at voir dire. In his ninth point of error, appellant argues that this denial of proper questioning also violates Article I, § 10 of the Texas Constitution.[7] Under Smith information about the parole consequences of a life sentence for appellant would neither be in the jury charge nor a permissible subject of final argument. It could not therefore materially limit trial counsel's effectiveness in any manner to refuse to let him ask questions about parole eligibility during

---

[7]     As for appellant's eighth point of error, failing to allow "proper" question does not violate the Sixth Amendment. There is no federal constitutional analog to a claim under Article I, § 10 of the Texas Constitution that a defendant can be denied effective assistance of counsel due to a trial court's erroneous denial of proper questions. See Ex Parte McKay, 819 S.W.2d 478, 488-9 (Tex.Cr.App. 1990) (Clinton, J., dissenting from denial of State's motion for rehearing).

that the evidence was "insufficient" to support it.  Thus, if we
hold Article 44.251(a) to its literal terms, this Court by defini-
tion will never reform a sentence of death to life on account of
"insufficiency" of the evidence to support a negative finding on
mitigation.  McFarland, 928 S.W.2d at 499.

    In order to give Article 44.251(a) effect, we could interpret
it to mandate reformation to life upon a finding that the jury's
negative answer was against the great weight and preponderance of
the evidence.  But as we have already shown, Article 37.071
§2(f)(4) assigns to the jury the task of evaluating what evidence
proffered in mitigation is "sufficient" to warrant a life sentence.
We cannot say that evidence is mitigating as a matter of law any
more than we can say, in a non-capital case, that the evidence is
insufficient to support a twenty year sentence, or that the great
weight and preponderance of the evidence establishes that the pro-
per sentence would have been ten years, probated.  As we state a-
bove, there is simply no way for an appellate court to review the
jury's normative judgment that the evidence did or did not warrant
a life sentence.

    There is one other alternative.  We could construe Article
44.251(a) to mandate that this Court conduct an independent, de
novo review of the mitigating evidence, and decide according to our
own lights whether Article 37.071 §2(e) ought to be answered in the
affirmative.  We think it highly unlikely, however, that this con-
struction would jibe with the Legislature's intent.  Such a scheme
would effectively render the jury's answer to the §2(e) special is-
sue merely advisory.  While that would undoubtedly withstand Eighth
Amendment scrutiny, it would constitute a radical departure from
our ordinary jury-deferring routine to review the "sufficiency" of
special issues at the punishment phase of a capital murder trial.
See Burns, 761 S.W.2d at 355-356. Presuming the Legislature to be
cognizant of this Court's prior caselaw, we would hardly expect it
to mandate a "sufficiency" review if by that it meant this Court
should re-evaluate and reweigh the same evidence the jury has al-

it is instructed to determine whether, in spite of its finding be-
yond a reasonable doubt that appellant would represent a continuing
threat to society, the circumstances of appellant's crime and life
nonetheless call for leniency, i.e., a life sentence.  The purpose
of the second special issue from appellant's perspective is not to
rebut the affirmative answer to the first special issue.  Rather,
the purpose is to determine whether the individual circumstances of
appellant's case and background call for sparing his life, even
though the jury has found that he may be a continuing threat to so-
ciety.  Because §2(e) does not contemplate aggravating factors, its
silence as to the burden of proof on aggravating factors does not
make it constitutionally infirm. McFarland, 928 S.W.2d at 518-9.

Similarly, silence as to the burden of proof on mitigating
circumstances does not render §2(e) unconstitutional.  As we have
said, the decision called for by the second special issue is a mor-
al, normative one, independent of the factual future dangerousness
decision.  The second special issue calls for a normative judgment
in which the jurors themselves decide what is mitigating evidence
and the extent to which that evidence is mitigating.  Unlike a fac-
tual determination, the assignment of a burden of proof to that de-
cision would not make sense, unless the burden of proof goes to the
facts underlying any potentially mitigating evidence.  Although the
Supreme Court has sanctioned placing a burden of proof as to miti-
gation evidence on the defendant, Walton, supra, we fail to under-
stand how a burden of proof can be applied to a moral judgment.

Appellant further contends the absence of a burden of proof on
§2(e) violates Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33
L.Ed.2d 346 (1972), because it provides no guidance to jurors an-
swering these questions.  We disagree.  The unlimited discretion
that each juror has in answering §2(e) -- both in determining what
evidence is mitigating and how mitigating such evidence is -- is
completely consonant with (and perhaps even required by) the in-
dividualization requirements of Woodson v. North Carolina, 428 U.S.
280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), Lockett v. Ohio, 438

TRANSCRIPT

CAUSE NO. 9403201 _____

**71863**

In the 178TH _____ District Court of Harris County, Texas,

Honorable wILLIAM HARMON _____, Judge Presiding.

GERALD CORNELIUS ELDRIDGE ____, APPELLANT

vs

THE STATE OF TEXAS

Appealed to the Court of Criminal Appeals of Texas, at Austin, Texas.

| Appellant Attorney for Appellant | Appellant Attorney for State |
|---|---|
| Mr. Henry Oncken | Mr. Calvin Hartman |
| 6810 F.M. 1960 W | Assistant District Attorney |
| Suite 100 | 201 Fannin |
| Houston, Texas 77069 | Houston, Texas 77002 |

Delivered to Court of Criminal Appeals of Texas, at Austin, Texas on the
__14__ day of _____June___, 19 94.

KATHERINE TYRA
District Clerk
Harris County, Texas

By: _____
Deputy

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

(Court of Criminal Appeals) Cause No. _____

Filed in the Court of Criminal Appeals of Texas, at Austin, Texas this
_____ day of _____, 19___.

**FILED IN**
**COURT OF CRIMINAL APPEALS**

JUN 16 1994

By: Thomas Lowe, Clerk
_____
Deputy

AP/CR-13   R01-01-91

INDEX page 2

                                                        PAGE

Motion to Dismiss and Order of the Court------------------ 62

Docket Sheet--------------------------------------------- 63

        Cause No: 674934

Indictment------------------------------------------------ 65

Motion for Psychiatric Examination: Sanity---------------- 66

Order Granting Motion for Psychiatric Examination: Sanity- 67

Motion for Psychiatric Examination: competency----------- 68

Order Granting Motion for Psychiatric Examination:
Competency----------------------------------------------- 69

Writ to Serve Copy of Veniremen for the Week Beginning
October 4, 1993------------------------------------------ 70

Agreed Setting------------------------------------------- 71

Sanity Evaluation---------------------------------------- 72

Competency Evaluation------------------------------------ 74

Defendant's Motion to Permit the Psychological Examination
of the Defendant and Order of the Court------------------ 77

Agreed Setting------------------------------------------- 80

Agreed Setting------------------------------------------- 81

State's Notice of Intent to Use as Evidence Business
Records Accompanied by Affidavit------------------------- 82

Notice of Intention to use Child Abuse Victim's Hearsay
Statement------------------------------------------------ 84

Notice of Intention to use Prior Convictions for
Purposes of Impeachment--------------------------------- 85

State's Notice of Intent to Use as Evidence Business
Records Accompanied by Affidavit------------------------- 86

Sanity Evaluation---------------------------------------- 87

Competency Evaluation----------------------------------- 90

Defendant's Motion to Dismiss Court Appointed Attorney
and Appoint New Counsel to Act on behalf of Defendant and
Order of the Court-------------------------------------- 93

Defendant's Motion to Have Written Rulings Made on All
Motions filed by the Defendant and Order of the Court----- 95

Motion to Dismiss and Order of the Court------------------ 98

Docket Sheet--------------------------------------------- 99

        Cause No: 9403201

Writ to Serve Copy of Veniremen for the Week Beginning
February 18, 1994--------------------------------------- 100

Motion for Psychiatric Examination: Sanity--------------- 102

Order Granting Motion for Psychiatric Examination: Sanity- 103

Motion for Psychiatric Examination: Competency----------- 104

INDEX page 4

                                                              Page

Capital Murder Jury STrike List--------------------------- 186

Defendant's Motion and Request for Transcript of
Testimony from Contested Competency Hearing and Order of
the Court------------------------------------------------- 199

Motion for Instructed Verdict of Not Guilty and Order of
the Court------------------------------------------------- 201

Defendant's Requested Jury Instruction and Order of the
Court----------------------------------------------------- 207

Defendant's Requested Jury Instruction and Order of the
Court----------------------------------------------------- 208

Charge of the Court on Guilt or Innocence----------------- 210

Verdict--------------------------------------------------- 218

Charge of the Court on Assessment of Punishment-----------219

Verdict--------------------------------------------------- 225

Judgment-------------------------------------------------- 228

Notice of Appeal------------------------------------------ 231

Pauper's Oath on Appeal and Orders of the Court----------- 232

Docket Sheet---------------------------------------------- 233

Letter of Assignment to the Court of Criminal Appeals----- 259

Certificate of the Clerk---------------------------------- 260

ORDER OF PRESENTATION OF INDICTMENTS

AND NO BILLS

On this the _____FEBRUARY 7, 1994_____, the following
styled indictments were delivered to the District Clerk of Harris
County, Texas, in accordance with Article 20.21, Code of Criminal
Procedure, by the Foreman of the Grand Jury, a quorum of the Grand Jury
being present.

Further, the following styled No Bills were received from the
Foreman of the Grand Jury, a quorum of the Grand Jury being present, by
the Grand Jury Bailiff and were presented to the Judge of the
_351st_ District Court of Harris County, Texas.

The Indictments and No Bills so received, are to be filed in
accordance with the directives of an Order dated April 25, 1989 and
recorded in Volume 005, Page 593 to wit:

THE STATE OF TEXAS

VS.

See Attached

RECORDER'S MEMORANDUM:
This instrument is of poor quality
and not satisfactory for photographic
recordation; and/or alterations were
present at the time of filming.

RECORDED
Vol. *185* Page *247*

CI/CR-01 - R041090

The Court having inspected the foregoing listed indictments and No Bills, which were delivered to the District Clerk of Harris County, Texas, the Court hereby sets the bail amount in each of the above indictments as that amount indicated on the indictment.

The Court further directs the District Clerk to issue all necessary process on the foregoing indictments.

Done the _____ day of __FEB 0 7 1994__, A.D. 19____ at _____ M.

Judge of the _____ District Court
Harris County Texas, Presiding

RECORDER'S MEMORANDUM:
This instrument is of poor quality and not satisfactory for photographic recordation, and/or alterations were present at the time of filming.

RECORDED
VOL. _165_ PAGE _244_

---

RECORDED: VOLUME 185 PAGE 245 ANNEX TO THE GENERAL MINUTES OF THE DISTRICT COURTS OF HARRIS OCUNTY, TEXAS. ORDER OF PRESENTATION OF INDICTMENTS AND NO-BILLS.

---

000004

COMPLAINT

FILED: JANUARY 4, 1i993

REV. 5/80

THE STATE OF TEXAS
VS.

| | | | |
|---|---|---|---|
| GERALD CORNELIUS ELDRIDGE | SPN: | 00651025 **995** | DATE PREPARED: --4-93 BY djb DA NO.: **386** |
| 7038 ROBKESON | DOB: BM 3-4-64 | | AGENCY: HPD O/R NO.: 1161493 |
| HOUSTON, TEXAS | | | NCIC CODE: 0901 14 ARREST DATE: TO BE |

LONY CHARGE:
**CAPITAL MURDER**

RELATED CASES:

USE NO.: **653189**

HARRIS COUNTY DISTRICT COURT NO.: **178th**

BAIL $ **NO BOND**   Vol. 150 Page 70 AXGM

PRIOR CAUSE NO.:

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

Before me, the undersigned Assistant District Attorney of Harris County, Texas, this day appeared the undersigned affiant, who under oath says that he has good reason to believe and does believe that in Harris County, Texas,

**GERALD CORNELIUS ELDRIDGE**

hereafter styled the Defendant, heretofore on or about **JANUARY 4, 1993**, did

then and there unlawfully

intentionally and knowingly cause the death of CYNTHIA BOGANY, hereafter styled the Complainant, by shooting the Complainant with a deadly weapon, namely a Firearm and during the same criminal transaction the Defendant did then and there unlawfully, intentionally and knowingly cause the death of CHRISSA BOGANY by shooting CHRISSA BOGANY with a deadly weapon, namely a Firearm.

It is further presented in Harris County, Texas, that GERALD CORNELIUS ELDRIDGE, hereafter styled the Defendant on or about JANUARY 4, 1993 in Harris County, Texas, did then and there unlawfully, intentionally and knowingly cause the death of CYNTHIA BOGANY and CHRISSA BOGANY, by shooting CYNTHIA BOGANY and CHRISSA BOGANY with a deadly weapon, namely a Firearm and the Defendant committed the murders pursuant to the same scheme and course of conduct.

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Sworn to and subscribed before me on JANUARY 4, 1993

*Fred W. Carroll*
FIANT

ASSISTANT DISTRICT ATTORNEY OF HARRIS COUNTY, TEXAS.

PORT OF ARREST

fendant arrested_____ ,19_____ ; placed in _____ jail.

_____ _____ _____
Officer            Badge No.           Agency

hereby certify the above complaint is on file in this office and is pending before the magistrate in said district court; by general orders of the judges of the district courts of Harris County, Texas, bail is set as indicated above, and the Sheriff of Harris County, Texas is to take the defendant in custody and; less released on bond, have him before the above-named court at 9:00 a.m. on _____ ,19_____

sued this _____ day of _____ ,19_____.    District Clerk of Harris County, Texas.

By _____ , Deputy

RETURN OF RELEASE ON BOND

fendant was released on attached bond.

_____ _____ _____ _____
Agency            Officer Accepting     Badge #     Date

RETURN OF SHERIFF

_____ ,19_____ , Defendant was: _____ Released on Bond

_____ Was received in Harris County, Jail

Sheriff of Harris County, Texas

By _____ _____ _____
Deputy            Badge No.           Date

000006

CAUSE NO. 065318901010

THE STATE OF TEXAS      *   IN THE 178 TH  DISTRICT COURT

VS.           *   OF HARRIS COUNTY, TEXAS

ELDRIDGE, GERALD CORNELIUS    *

### STATUTORY WARNING BY MAGISTRATE

(UNDER ARTICLE 15.17 OF THE TEXAS CODE OF CRIMINAL PROCEDURE AS AMENDED)

ON THIS DAY  ELDRIDGE, GERALD CORNELIUS
BLACK , MALE , 28 YEARS OF AGE, PERSONALLY APPEARED BEFORE ME IN THE
CUSTODY OF FRED W. CARROLL
OF HPD  , AND I GAVE SAID ACCUSED THE FOLLOWING WARNING

ELDRIDGE, GERALD CORNELIUS  , YOU HAVE BEEN ACCUSED OF THE
OFFENSE OF CAPITAL MURDER (MULTI MURDER) .

YOU HAVE THE RIGHT TO RETAIN COUNSEL, YOU HAVE A RIGHT TO REMAIN SILENT. YOU
HAVE A RIGHT TO HAVE AN ATTORNEY PRESENT DURING ANY INTERVIEW WITH PEACE OFFICERS
OR ATTORNEYS REPRESENTING THE STATE. YOU HAVE A RIGHT TO TERMINATE AN INTERVIEW
WITH PEACE OFFICERS OR ATTORNEYS REPRESENTING THE STATE AT ANY TIME. YOU HAVE A
RIGHT TO REQUEST THE APPOINTMENT OF COUNSEL IF YOU ARE INDIGENT AND CANNOT AFFORD
COUNSEL, AND YOU HAVE A RIGHT TO HAVE AN EXAMINING TRIAL.

YOU ARE NOT REQUIRED TO MAKE ANY STATEMENT AND ANY STATEMENT YOU MAKE MAY AND
PROBABLY WILL BE USED AGAINST YOU IN YOUR TRIAL.

YOUR BAIL IS SET AT $000000
(OR)
BAIL IS DENIED. IF A FORMAL COMPLAINT IS FILED AGAINST YOU, YOUR BAIL WILL
THEN BE SET

ABOVE STATUTORY WARNING GIVEN BY THE UNDERSIGNED MAGISTRATE, HARRIS COUNTY
TEXAS ON THE  5TH DAY OF  JANUARY  , 1993.

_William Harris_ (signature)
MAGISTRATE

I UNDERSTAND THE ABOVE WARNING.

**F I L E D**
KATHERINE TYRA
District Clerk

JAN - 5 1993

x _Signature refused_
DEFENDANT

Harris County Texas

By_____
    **Deputy**

REMARKS - Δ EMOTIONALLY UPSET
AND UNABLE TO SIGN.

000008

CAUSE NO. 653189

THE STATE OF TEXAS                    IN THE 178 DISTRICT COURT

VS.                                    OF

Eldridge, Gerald Cornelius           HARRIS COUNTY, TEXAS
DEFENDANT

## ORDER GRANTING MOTION

## FOR PSYCHIATRIC EXAMINATION: SANITY

On this the 5th day of JAN , 19 93 , came on to be heard and considered the Motion for Psychiatric Examination, as attached, of the above-named defendant in this cause; said Motion was presented to the Court, and the Court having considered said Motion, is of the opinion that said Motion should be granted.

It is Therefore, Ordered, Adjudged and Decreed that the Harris County Forensic Psychiatric Services conduct a psychiatric examination of the above-named defendant to determine the defendant's present sanity at the time of the offense pursuant to Art. 46.03, Texas Code of Criminal Procedure.

It is Hereby Further Ordered the Harris County Forensic Psychiatric Services file the examination report with this Court on or before the 16th day of FEB. , 19 93 .

It is hereby Further Ordered that Assistant District Attorney assigned to this court shall provide the offense report regarding these charges on the above named defendant to the Harris County Forensic Psychiatric Services.

It is Hereby Further Ordered that in the event the Harris County Forensic Psychiatric Services is unable to file the examination report on nor before the above date, that the Administrator of the Harris County Forensic Psychiatric Services advise the Court as to why said report is not filed and the date it will be filed.

SIGNED AND ENTERED this the 5th day of JAN , 19 93 .

William Harmon
Judge
178 DISTRICT COURT
HARRIS COUNTY, TEXAS

FOR INFORMATION PURPOSES: (Check one)
☒ Defendant speaks English
☐ Defendant does not speak English,
   but speaks and understands:
_____

ATTORNEY FOR DEFENDANT (PLEASE PRINT)
NAME: Danise M. Crawford
ADDRESS: 1600 Smith St. #4120
Hou. TX. 77002
TELEPHONE: (713) 951-7500
BAR CARD NO.: 5502 0150

RECORDER'S MEMORANDUM:
This instrument is of poor quality
and not satisfactory for photographic
recordation; and/or alterations were
present at the time of filming.

000010

DISTRICT CLERK                        13 ne997ne

CAUSE NO. 653184

THE STATE OF TEXAS                    IN THE 778 DISTRICT COURT

VS.                                   OF

Eldridge, Gerald Cornelius            HARRIS COUNTY, TEXAS
DEFENDANT

RECORDER'S MEMORANDUM:
This instrument is of poor quality
and not satisfactory for photographic
recordation; and/or alterations were
present at the time of filming

## ORDER GRANTING MOTION

### FOR PSYCHIATRIC EXAMINATION: COMPETENCY

On this the 5 day of JAN , 19 93, came on to be heard and considered the
Motion for Psychiatric Examination, as attached, of the above-named defendant in this cause;
said Motion was presented to the Court, and the Court having considered said Motion, is of
the opinion that said Motion should be granted.

It is Therefore, Ordered, Adjudged and Decreed that the Harris County Forensic Psychiatric
Services conduct a psychiatric examination of the above-named defendant to determine the
defendant's present competency to stand trial pursuant to Art. 46.02, Texas Code of Criminal
Procedure.

It is Hereby Further Ordered the Harris County Forensic Psychiatric Services file the
examination report with this Court on or before the 16th day of Feb , 1993.

It is hereby Further Ordered that Assistant District Attorney assigned to this court shall
provide the offense report regarding these charges on the above named defendant to the Harris
County Forensic Psychiatric Services.

It is Hereby Further Ordered that in the event the Harris County Forensic Psychiatric
Services is unable to file the examination report on nor before the above date, that the
Administrator of the Harris County Forensic Psychiatric Services advise the Court as to why
said report is not filed and the date it will be filed.

SIGNED AND ENTERED this the 5th day of JAN , 19 93.

Wesson Harmon
Judge
178 DISTRICT COURT
HARRIS COUNTY, TEXAS

FOR INFORMATION PURPOSES: (Check one)
☒ Defendant speaks English
☐ Defendant does not speak English,
but speaks and understands: _____

ATTORNEY FOR DEFENDANT (PLEASE PRINT)

NAME: Danise M. Crawford

ADDRESS: 1600 Smith St. #4120

Houston, Texas 77002

TELEPHONE: (713) 951-7500

BAR CARD NO.: 55020150

000012                    DISTRICT CLERK          13 ge99982e

13/NCC A99 thru
V/ NCC A99

CAUSE NO. _653189_   CHARGE _Capital Murder_

THE STATE OF TEXAS                        _178_ DISTRICT COURT
                                          OF HARRIS COUNTY, TEXAS.
VS.

_Eldridge, Gerald Cornelius_

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes _Gerald Cornelius Eldridge_, defendant in the above styled and numbered cause, and respectfully petitions the Court to appoint counsel to represent him in said felony cause and would show to the Court that he is too poor to employ counsel.

_Signature Waived_
                Defendant

Signed to and subscribed before me on this, the ___5___ day of ___Jan___,
A.D. 19 _93_

KATHERINE TYRA
District Clerk

**F I L E D**

JAN - 5 1993
Time: _10:10_
Harris County, Texas
By _____

By: _____
    Deputy District Clerk
    Harris County, Texas

## ORDER APPOINTING COUNSEL

On this, the ___5___ day of ___Jan___, A.D. 19 _93_, it appearing to the Court that the above named defendant has executed an affidavit stating that he is without counsel and is too poor to employ counsel, it is ordered that the attorney listed below is appointed to represent the above named defendant in said cause.

_Danise Crawford_
Attorney
_1600 Smith St. Ste. 4120_
Address
_Houston, Tx. 77002_
City            State      Zip
_951-7500_
Phone
_05020150_
BAR #

RECORDER'S MEMORANDUM:
This instrument is of poor quality and not satisfactory for photographic reproduction; and/or alterations were present at the time of filming

It is further ordered that the said cause is set for: _ARRAIGNMENT_

on the _16th_ day of _Feb._, 19 _93_, at 9:00 A.M.

Signed this ___5___ day of ___Jan___, A.D. 19 _93_

_William Harmon_
    Judge Presiding

Sanity Evaluation
Gerald C. Eldridge
Page Two

for a short period time to the Psychiatric Treatment Unit in the Harris County Jail, but discharged with a diagnosis of Malingering.

It is the opinion of this examiner that Mr. Eldridge is feigning symptoms of a mental illness to avoid criminal prosecution (i.e. malingering). There is no evidence to indicate that he was suffering from a mental disease or mental defect on or about the time that the alleged offense occurred that would be of the type, nature, or severity to prohibit him from knowing whether or not the alleged behavior was wrong. Therefore, it is the opinion of this examiner that Mr. Eldridge should be considered legally sane on or about the time that the alleged offense occurred.

If there are any further questions regarding this evaluation, please do not hesitate to contact me.

Sincerely,


Edward G. Silverman, Ph.D.
Psychologist


EGS:mkm/eldridge.for

for a short period time to the Psychiatric Treatment Unit in the Harris County
Jail, but discharged with a diagnosis of Malingering.

It is the opinion of this examiner that Mr. Eldridge is feigning symptoms of
mental illness to avoid criminal prosecution (i.e. malingering). To the best of
this examiner's knowledge, Mr. Eldridge does not have any documented history of
mental illness or psychiatric treatment. His overly dramatic presentation is
very atypical of patients who truly suffer from a mental disorder. It is the
opinion of this examiner that if Mr. Eldridge chooses to do so, he has the
ability to consult with his attorney with a reasonable degree of rational
understanding and it is the opinion of this examiner that Mr. Eldridge likely
possesses a rational, as well as a factual understanding of the legal proceedings
against him. For these reasons, it is the opinion of this examiner that Mr.
Eldridge is competent to stand trial at the present time.

If there are any further questions regarding this evaluation, please do not
hesitate to contact me.

Sincerely,


Edward G. Silverman, Ph.D.
Psychologist



EGS:mkm/eldridge.for

Court Coordinator No. 2-A

CAUSE NO. 653189       CHARGE *Cap. Murder*

THE STATE OF TEXAS              *178* DISTRICT COURT

VS.                        OF HARRIS COUNTY, TEXAS.

*Eldridge, Gerald*
Defendant

## AGREED SETTING

The undersigned Counsel hereby agrees this case is reset for

*ARRAIGNMENT*                    to                    *4-28-93    9:00AM*
(Type of Setting)                              (Date)

_____              X △ *in custody*
Attorney for the State                                Defendant

                                   *Danise M. Crawford*
                                   (Print) Attorney for Defendant

                                   *Danise M. Crawford*
                                   (Signature) Attorney for Defendant

                                   *1600 Smith St. Ste 4120*
                                   (Street Address)

                                   *Houston, TX 77002*
                                   (City)    (State)    (Zip)

                                   *951-7500*
                                   (Phone Number)

                                   *05020150*
                                   (Bar Number)

APPROVED BY THE COURT:

_____
Judge Presiding

*3-23-93*
Date

F I L E D
KATHERINE TYRA
District Clerk

MAR 2 3 1993

Time: *10 O'Clock AM*
Harris County, Texas
By _____
Deputy

000020

DISTRICT CLERK

CAUSE NO. 653189

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| V. | § | HARRIS COUNTY, TEXAS |
| GERALD ELDRIDGE | § | 178TH JUDICIAL DISTRICT |

### DEFENDANT'S MOTION TO PERMIT THE PSYCHOLOGICAL EXAMINATION OF THE DEFENDANT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, GERALD ELDRIDGE, Defendant in the above styled cause, by and through Defendant's court appointed attorney of record, and moves the Court to permit the psychological examination of the Defendant. In support of such Motion, he would show the Court as follows:

#### I.

The undersigned attorney is counsel of record for the Defendant.

#### II.

The Defendant is presently incarcerated in the Harris County Jail. Defendant is indigent and cannot make bond.

#### III.

Counsel for the Defendant, in order to render effective assistance of counsel in this case, believes the Defendant should be examined a psychologist.

#### IV.

The Defendant respectfully requests that a psychologist, Dr. Richard Austin, be appointed to examine the Defendant and report his findings to the Court.

#### V.

The Sheriff's Department of Harris County, Texas, will not permit examinations without an Order of this Court.

CAUSE NO. 653189

| THE STATE OF TEXAS | § | IN THE DISTRICT COURT OF |
| V. | § | HARRIS COUNTY, TEXAS |
| GERALD ELDRIDGE | § | 178TH JUDICIAL DISTRICT |

### ORDER

On the _____ day of _____, 1993, came on to be heard the foregoing Motion To Permit Psychological Examination of the Defendant, and after due consideration, the Motion is hereby GRANTED in all things.

It is further ORDERED the Sheriff Johnny Klevenhagen or his deputies permit psychologist, Dr. Richard Austin, to visit the Defendant, Gerald Eldridge, for a reasonable period of time in order to conduct a psychological examination of the Defendant.

SIGNED this the _____ day of _____, 1993.

_____
JUDGE PRESIDING

000024

13 x 1996 x e
CATT2

CAUSE NO. 653189          CHARGE     CAP. Murder

THE STATE OF TEXAS                         178        DISTRICT COURT

VS.                                        OF HARRIS COUNTY, TEXAS.

ELDRIDGE, GERALD

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes   GERALD ELDRIDGE   , defendant in the above styled and numbered cause, and respectfully petitions the Court to appoint counsel to represent him in said felony cause and would show to the Court that he is too poor to employ counsel.

                              Signature Waived
                                   Defendant

**F I L E D**

Sworn to and subscribed before me on this the   28   day of   APRIL   ,

A.D. 19 ___

KATHERINE TYRA
District Clerk

APR 28 1993

Time: _____

Harris County, Texas

By _____                    By: _____

Deputy                        Deputy District Clerk
                              Harris County, Texas

## ORDER APPOINTING COUNSEL

On this, the   28   day of   APRIL   , A.D. 19 93 , it appearing to the Court that the above named defendant has executed an affidavit stating that he is without counsel and is too poor to employ counsel, it is ordered that the attorney listed below is appointed to represent the above named defendant in said cause.

WAYNE T. HILL
Attorney

4615 S.W. FWY. #600
Address

HOU,     TX.     77027
City     State   Zip

623-8312
Phone

09656300
BAR #

RECORDER'S MEMORANDUM:
This instrument is of poor quality and not satisfactory for photographic recordation; and/or alterations were present at the time of filming.

It is further ordered that the said cause is set for:   J-TRIAL

on the   4   day of   OCT   , 19 93 , at 9:00 A.M.

Signed this   28   day of   APRIL   , A.D. 19 93

                              William Hammon
                              Judge Presiding

2nd CHAIR

000026

V0948.0770

*Wz1996nt*

IN THE 178TH DISTRICT COURT OF

HARRIS COUNTY, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS | X | |
| | X | |
| | X | |
| VS. | X | NO. 653189 |
| | X | |
| GERALD ELDRIDGE | X | |

MOTION TO QUASH SUBPOENA OR, IN THE
ALTERNATIVE, TO ALLOW IN CAMERA INSPECTION
ONLY OF CONFIDENTIAL SUBPOENAED RECORDS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the Texas Department of Criminal Justice, Pardons and Paroles Division, Movant herein, by and through its General Counsel, and files this Motion to Quash Subpoena or, In the Alternative, to Allow in Camera Inspection Only of Confidential Subpoenaed Records, and in support thereof, would respectfully show the Court the following:

I.

On September 15, 1993, the Texas Department of Criminal Justice, Pardons and Paroles Division was served by facsimile on General Counsel Harry C. Green with a subpoena duces tecum directing the Pardons and Paroles Division to produce its records pertaining to GERALD ELDRIDGE for inspection and use by the State in the course of this trial.

II.

The material which the Defense has requested is confidential under state law. Article 42.18, Section 18, Tex. Code Crim. Proc. Ann. (Vernon Supp. 1993), states:

> All information obtained in connection with inmates of the Institutional Division subject

when the State fails to satisfy the requisite test for production of such documents. "[I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" United States v. Nixon, 418 U.S. 683, 699-700, 94 S.Ct. 3090, 3103 (1974); see also United States v. Bearden, 423 F.2d 805, 810 (5th Cir. 1970). Unless the parties in this case make such a showing, the subpoena duces tecum must be quashed.

V.

In the alternative, the Pardons and Paroles Division would request that this Court examine the records in camera, after the State has satisfied the Nixon test, and turn over to the State only those portions of the records it deems relevant. See e.g., Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989 (1987); see also United States v. Nixon, 777 F.2d 958 (5th Cir. 1985). In Ritchie, the Court deemed an in camera inspection conducive to a proper balancing of a criminal defendant's interest in a fair trial and the State of Pennsylvania's interest in preserving the confidentiality of its child abuse files.

The Texas Statute in question here seeks to preserve the confidentiality of Pardons and Paroles Division files because

000030

## CERTIFICATE OF SERVICE

I, Harry C. Green, General Counsel, Texas Department of Criminal Justice, Pardons and Paroles Division, do hereby certify that one true and correct copy of the above and foregoing Motion to Quash Subpoena or, in the Alternative, to Allow In Camera Inspection Only of Confidential Subpoenaed Records has been served by personal service to Donna Goode, Assistant District Attorney, 201 Fannin Street, Suite 200, Houston, Texas 77002-1901 this the 17th day of September, 1993.

HARRY C. GREEN
General Counsel



**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**
**PARDONS AND PAROLES DIVISION**

Bob Owens, Division Director

P.O. Box 13401, Capitol Station • 8610 Shoal Creek Blvd. • Austin, Texas 78711 • (512) 406-5200

September 15, 1993

Ms. Katherine Tyra
District Clerk of Harris County
301 San Jacinto, #101B
Houston, Texas 77002

        RE:   The State of Texas v.
              Gerald Cornelius Eldridge
              In the 178th District Court
              of Harris County, Texas
              No. 653189

Dear Ms. Tyra:

    Pursuant to Subpoena Duces Tecum issued at the request of
the defense counsel, enclosed please find a copy of the Motion
to Quash Subpoena Or, In The Alternative, To Allow In Camera
Inspection Only Of Confidential Subpoenaed Records concerning
the above captioned cause.

                    Sincerely,

                    Harry C. Green
                    General Counsel

HCG:bjb
 cc:File
Enclosures

000034

CAUSE NO. 653189

*141 mu 4 44*
*JMC*

| STATE OF TEXAS | * | IN THE DISTRICT COURT OF |
|---|---|---|
| VS. | * | HARRIS COUNTY, TEXAS |
| GERALD ELDRIDGE | * | 178th JUDICIAL DISTRICT |

### DEFENDANT'S MOTION FOR DISCLOSURE
### AND PRODUCTION OF EXCULPATORY AND MITIGATING EVIDENCE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Defendant, GERALD ELDRIDGE, in the above entitled and numbered cause, and respectfully moves the Court for an order requiring the State of Texas, by and through its prosecuting Attorney, to produce evidence within its actual or constructive possession which is, or may be hereafter, of an exculpatory or mitigating nature pursuant to the doctrine set forth in Brady v. Maryland, 373 U.S. 83 (1963). This Motion refers, but is not limited to the following:

1. All testimony taken before any State Grand Jury or statements of any kind whatsoever, with respect to the subject matter of this indictment that are exculpatory.

2. All evidence or other information in the possession of the State of Texas which arguably reflects adversely on the credibility of any prosecution witness, including but not limited to mental and physical examinations and reports thereof.

3. Any evidence obtained by the State in its quest for aggravating evidence, that in effect would mitigate the possibility of the death penalty herein. This is meant to include, but is not limited to the name and address of any witness interviewed by the State of Texas that gave an opinion to any investigator/peace officer of the State inconsistent with an opinion that the Defendant is dangerous and would be a continuing threat to society.

4. All other information, known by or available to the prosecuting attorney or any law enforcement agency connected with the investigation in this case which is arguably exculpatory or mitigating in nature including all information which by the exercise of due diligence may or could be known to such prosecuting attorney.

000036

CAUSE NO. 653189

| STATE OF TEXAS | * | IN THE DISTRICT COURT OF |
| VS. | * | HARRIS COUNTY, TEXAS |
| GERALD ELDRIDGE | * | 178th JUDICIAL DISTRICT |

<u>O R D E R</u>

On this the ____ day of _____, 19___, came to be heard the foregoing motion of the Defendant, GERALD ELDRIDGE. After due consideration thereon it is the ORDER of this Court that the motion and/or request of the Defendant is in all things:

GRANTED / DENIED.

(or in the alternative) Is ruled on as follows:

_____

_____

_____

_____

_____
JUDGE  PRESIDING

000038

hospital. They tried to take me and I ran." Regarding substance use, he stated that kids in the neighborhood would make him smoke "those cigarettes" and would beat him up if he did not smoke them. He did not specify what was in the cigarettes. When asked if he had used any drugs recently, he stated "I don't mess with none of that stuff." He also reported that he does not drink.

When asked what he is currently charged with, Mr. Eldridge stated "they say I did some bad stuff." He indicated that he is accused of hurting his little girl, Chrissa, and her mother, Cynthia. When asked if either of them were badly hurt, he stated "I don't know. People won't even talk to me." When asked if he is accused of killing anyone, Mr. Eldridge stated "she say Cynthia. But that ain't true because I talk to Cynthia." He went on to state that Cynthia comes to see him every now and then in his cell. He stated that she sometimes brings his daughter and sometimes she comes by herself. He stated that he does not believe that Cynthia is dead. He stated "I don't believe this stuff happened, but if it did, I'm pretty sure I know why." Mr. Eldridge went on to provide the following information regarding his relationship with Cynthia and various events and circumstances that occurred prior to his arrest. He stated that Cynthia's family was real tight until her mother died. He stated that some members of the family had money and some members of the family did not have any money. He stated that the members of the family who did not have money started selling drugs. He stated that it was clear to him that his relationship with Cynthia was not going to work out but he always loved his children and took care of them. He stated that Cynthia's family members were using her. He stated that every time he looked up there was a different person coming through the door. He stated that Cynthia's sister would come to Cynthia's apartment with different people and they would smoke dope right there in front of the children. He stated "I didn't want my kids raised that way. You don't raise kids like that. She wasn't willing to do anything about it because they were footing part of the bills." Mr. Eldridge stated that he asked Cynthia to give him a chance to help out. He stated that he bought food, clothes, toys and furniture. However, he stated that Cynthia knew that he was messing with another lady and she wanted him to leave this other woman alone. Mr. Eldridge stated that he ended up coming to jail on another charge and, while he was in jail, he was unable to contribute financially to his family. He stated that, as a result of this, Cynthia began her involvement in drug dealing to make up for the lost money.

Mr. Eldridge stated that he was arrested in downtown Houston. He stated that he was in the process of trying to get a friend a job and was also in the process of trying to see his parole officer. He stated that he talked to his parole officer on the phone and was told that there was a warrant for his arrest. He stated that his parole officer told him to go down to the police department. He stated that he went down to the Houston Police Department and told them who he was and he indicated that he was arrested at that time.

On mental status examination, Mr. Eldridge was alert and oriented for person and place but only partially oriented for time. He knew that it was September, 1993 but claimed to be unsure of the exact date. Mr. Eldridge's behavior fluctuated considerably during the course of this interview. Initially, he kept his head down and made no eye contact with the examiner. He rubbed his face and looked towards the floor and periodically became tearful. He was extremely slow to answer many of the examiner's questions and often responded in a vague and somewhat perplexed manner. Although always clear and coherent in his speech, throughout much of the interview he acted as if he was having trouble processing information and formulating his thoughts. At such times, he spoke in a manner which would imply some significant impairment in his cognitive functioning. However, when discussing information regarding Cynthia's family, her alleged involvement in drugs, her alleged parental liabilities, and his efforts to provide for his children, Mr. Eldridge became very talkative and articulate and

COMPETENCY EVALUATION

FILED: NOVEMBER 1, 1993



The Mental Health and Mental Retardation Authority for Harris County

# FORENSIC PSYCHIATRIC SERVICES

3rd Floor, Harris County Jail ★ 1301 Franklin
Houston, Texas ★ 77002

Administration:
(713) 755-7241

Forensic Service:
(713) 755-6904

October 27, 1993

COMPETENCY EVALUATION

The Honorable Judge William Harmon
178th District Court
Harris County, Texas

Re:    Gerald C. Eldridge
       Cause No. 653189 (Capital Murder)

Dear Judge Harmon:

Gerald C. Eldridge is a twenty-nine-year-old African American male, who was
evaluated on the 3rd floor of the Harris County Jail on September 30, 1993,
pursuant to an order from the 178th District Court.  Mr. Eldridge was evaluated
by means of a clinical interview, a review of the Official Offense Report, and
a review of medical records from the Harris County Jail.  The purpose of this
evaluation was to determine his present competency to stand trial.  Mr. Eldridge
was informed of the nature and purpose of the evaluation and was told that a
written report concerning the results would be sent to the court.  He was told
that any information that he provided the examiner might be revealed in court and
was, therefore, not confidential.  He was also informed that he could decline to
answer any particular question or terminate the evaluation at any time.  Mr.
Eldridge indicated that he understood, and agreed to continue with the
evaluation.  It should be noted that Mr. Eldridge was seen by this examiner on
January 25, 1993 in reference to the same cause number and was found by this
examiner to be competent to stand trial at that time and legally sane at the time
of the alleged offense.  (See reports dated February 15, 1993)  It is this
examiner's understanding that the issues of competency and sanity are still being
contested in this case.  Since a significant amount of time has elapsed since
this examiner's initial evaluation, it was recommended that Mr. Eldridge be
reevaluated.

Mr. Eldridge stated that he was born in Nebraska on March 4, 1964.  When asked
about his mother and father, he began crying and eventually stated "I don't want
to talk about them."  He acknowledged that he has brothers and sisters but
indicated that he does not know how many brothers or sisters he has.  When asked
about school, Mr. Eldridge stated "it's hard for me to talk to people I don't
know.  It's hard.  It's hard."  He indicated that he was in Special Education and
stated that his brother, Barry, did all of his school work.  He stated "I never
took a test or nothing in school."  He was either unable or unwilling to tell
this examiner how far he went in school.  He also indicated that people always
jumped on him in school.  Regarding employment, Mr. Eldridge stated that he has
done construction work.  He stated that his last job was in Texas City but he
could not recall the name of the company.  He stated that he was in the process
of being transferred at the time of his arrest.  Mr. Eldridge stated that he has
never been married.  He stated that he lived off and on with a girl named
Cynthia.  He stated that prior to coming to jail he was living with his brother,
Barry, and his mother.

When asked about psychiatric treatment, Mr. Eldridge stated "I ain't going to no

000042

different from his clinical presentation when previously evaluated by this examiner in January of 1993, it was recommended that he be readmitted to the Psychiatric Treatment Unit in the Harris County Jail for further observation. In response to my request, he was admitted to the Psychiatric Treatment Unit on October 5, 1993. On October 7, 1993, he refused psychological testing, complaining that he cannot read or write. On October 13, 1993, Mr. Eldridge was described as agitated and physically combative. He was threatening staff and others but was described as clear, coherent, goal-directed, and oriented. He was also described as verbalizing no auditory or visual hallucinations or delusions. He was described as alert and exhibiting no psychotic symptoms. He was discharged from the treatment unit with no evidence of an Axis I disorder, no evidence of a treatable mental illness, and an Axis II diagnosis of Anti-Social Personality Disorder.

In conclusion, the results of this evaluation indicate that Mr. Eldridge is malingering. He continues to feign symptoms of a mental illness in an effort to avoid criminal prosecution and responsibility for his criminal behavior. Although he may have learned from my prior evaluation to make his clinical presentation less dramatic and more believable, his presentation is still not consistent with any known mental disorder. What was most striking during this current interview was his ability to communicate in a very clear, coherent, articulate, and appropriate manner when providing information to the examiner that he thought might be self-serving (e.g. information that might cast a negative light on the complainant and might implicate others in her death). At other times during the interview, Mr. Eldridge acted as if he had difficulty processing information, recalling basic facts about his life, and communicating appropriately. Although he may be genuinely depressed, given his current legal predicament, it is this examiner's firm belief that the other aspects of his clinical presentation which would make it difficult for him to consult with his attorney are clearly feigned. It is this examiner's opinion that Mr. Eldridge has the ability to consult with his attorney with a reasonable degree of rational understanding if he chooses to do so. It is also this examiner's opinion that Mr. Eldridge possesses a rational as well as a factual understanding of the legal proceedings against him but chooses not to demonstrate this understanding at the present time. It is the opinion of this examiner that Mr. Eldridge is competent to stand trial and he should be encouraged by his attorney to cooperate with the process and assist in his own defense.

If there are any further questions regarding this evaluation, please do not hesitate to contact me.

Sincerely,

Edward G. Silverman, Ph.D.
Psychologist

EGS:ldb\2eldridge.for

F I L E D
KATHERINE TYRA
District Clerk

NOV - 1 1993
Time:
Harris County, Texas
By:
Deputy

000044

Court Coordinator No. 2-A

CAUSE NO. 674934
653189

CHARGE CAP murder
CAP. murder

THE STATE OF TEXAS

178 DISTRICT COURT

VS.

OF HARRIS COUNTY, TEXAS.

EldRiDGE, GERALd C.
Defendant

*OFF DOCKET*

## AGREED SETTING

The undersigned Counsel hereby agrees this case is reset for

J. TRiAL
(Type of Setting)
to
2-14-94
(Date)

DONNA Goode NOT IN Court 12/10/93    OFF DOCKET
Attorney for the State                               Defendant

DENISE M. Crawford
(Print) Attorney for Defendant

Denise M. Crawford
(Signature) Attorney for Defendant

1112 Southmore Blvd.
(Street Address)

Houston, Tx. 77004
(City)          (State)          (Zip)

523-4050
(Phone Number)

05020150
(Bar Number)

F I L E D
KATHERINE TYRA
District Clerk

DEC 1 0 1993

Time: _____
Harris County, Texas

By _____
Deputy

APPROVED BY THE COURT:

41
Judge Presiding

12-10-93
Date

*OFF DOCKET*

000046

DISTRICT CLERK

IN THE 178th DISTRICT COURT OF

HARRIS COUNTY, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS | X | |
| | X | |
| | X | |
| VS. | X | NO. 653189 |
| | X | |
| GERALD CORNELIUS ELDRIDGE | X | |

MOTION TO QUASH SUBPOENA OR, IN THE
ALTERNATIVE, TO ALLOW IN CAMERA INSPECTION
ONLY OF CONFIDENTIAL SUBPOENAED RECORDS

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES the Texas Department of Criminal Justice, Pardons and Paroles Division, Movant herein, by and through its Staff Counsel, and files this Motion to Quash Subpoena or, In the Alternative, to Allow in Camera Inspection Only of Confidential Subpoenaed Records, and in support thereof, would respectfully show the Court the following:

I.

On February 16, 1994, the Texas Department of Criminal Justice, Pardons and Paroles Division was served by personal service, through William R. Hubbarth, Staff Counsel and Custodian of Records, with a subpoena duces tecum to appear and testify in behalf of the Requesting Party in the above styled case. The subpoena directs the Texas Department of Criminal Justice, Pardons and Paroles Division to produce any and all of its records pertaining to GERALD CORNELIUS ELDRIDGE for inspection and use by the Requesting Party in the course of this trial.

II.

The material which the Requesting Party has requested is

**000048**