IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GERALD CORNELIUS ELDRIDGE, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-1847 |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal | § | |
| Justice-Correctional Institutions | § | |
| Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

Gerald Cornelius Eldridge is a Texas death-row inmate. He is scheduled for execution on November 17, 2009 at 6:00 p.m. On November 16, 2009, Eldridge moved in this court to stay his execution on the ground that he is mentally ill and incompetent to be executed under the standards set by the United States Supreme Court in *Ford v. Wainwright,* 477 U.S. 399 (1986), and *Panetti v. Quarterman,* 551 U.S. 930, 948 (2007). Although this case arises out of murders committed years ago, it is undisputed that Eldridge timely raised this claim under the Supreme Court's case law.

The United States Supreme Court has held that "'the Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane.'" *Panetti*, 551 U.S. at 934. This prohibition applies even if a prisoner was earlier competent to be held responsible for committing a crime and to be tried for it. Once a prisoner makes a "preliminary showing that his current mental state would bar his execution, the Eighth Amendment . . . entitles him to an adjudication to determine his condition." *Id.* at 934-35.

The issue now before this court is not whether Eldridge is, or is not, mentally ill or whether he is, or is not, competent to be executed in compliance with the Constitution.  The only issue now before this court is whether, based on the record presented, the prisoner has made a "substantial threshold showing of insanity."  *Id.*  If such a showing is made, the execution must be delayed to permit a "fair hearing" to determine competency to be executed.  A fair hearing requires an opportunity to submit evidence and arguments from the prisoner's counsel, including expert psychiatric evidence to respond to the State's own psychiatric examination.  *Id.* at 952.

The record before this court shows that Eldridge has made that substantial threshold showing.  Under the case law, this court must therefore stay his execution to determine whether his condition allows his execution.

I.     **Procedural and Factual Background**

Eldridge does not dispute that he murdered his common-law wife, Cynthia Bogany, and her daughter, Chirissa, and shot his son, Terrell.  Eldridge does not assert that he is innocent of capital murder.  Nor does Eldridge assert that he was incompetent to be tried or that the conviction violated his constitutional or federal rights.  The only issue is whether the Eighth Amendment bars his execution because he is now mentally incompetent.

In April 1994, Eldridge was convicted of capital murder and sentenced to death for murdering Cynthia Bogany and her nine year-old daughter, Chirissa.  Cynthia Bogany was Eldridge's former girlfriend and the mother of his son, Terrell.  The evidence established that at about 5:00 a.m. on January 4, 1993, Eldridge went to Cynthia Bogany's apartment.  He kicked in the door and shot Chirissa between the eyes at point-blank range, killing her instantly.  Eldridge then shot at Wayne Dotson, who was also in the apartment.  Dotson was wounded but survived.  Eldridge

2

also shot his son, Terrell, at close range.  Terrell, seven years old, was wounded but survived.

Eldridge then chased Cynthia Bogany, who had fled the apartment.  Eldridge caught her when she

tripped and fell on stairs outside a neighbor's apartment.  Despite her pleas for her life, Eldridge shot

her twice in the head, killing her instantly.  *See Eldridge v. State*, 940 S.W.2d 646, 649

(Tex.Crim.App. 1996).

The Texas Court of Criminal Appeals affirmed Eldridge's conviction and sentence.  *Id.*  On

March 30, 1998, Eldridge filed an application for a writ of habeas corpus in state court.  On March

30, 1998, Eldridge filed his initial state habeas corpus application.  That application was pending

when the Supreme Court of the United States decided *Atkins v. Virginia*, 536 U.S. 304 (2002)*,*

holding that the Eighth Amendment prohibits the execution of mentally retarded offenders.  Eldridge

filed a second habeas application raising an *Atkins* claim.

The Texas Court of Criminal Appeals denied Eldridge's initial habeas application on

February 9, 2005.  *Ex Parte Eldridge*, No.60,478-02 (Tex. Crim. App. Feb, 9, 2005).  On the same

day, the Court of Criminal Appeals dismissed Eldridge's second habeas application as an abuse of

the writ.  *Ex Parte Eldridge*, No. 60,478-01 (Tex. Crim. App. Feb. 9, 2005).

Eldridge filed a skeletal petition for a writ of habeas corpus in this court on May 23, 2005

and filed an amended petition on May 26, 2006.  The amended petition raised only one claim for

relief: that the Eighth Amendment prohibits Eldridge's execution because he is mentally retarded.

Following an evidentiary hearing, this court denied relief.  In a detailed opinion issued on March

13, 2008, this court rejected Eldridge's claim that he is mentally retarded and dismissed his petition

for a writ of habeas corpus.  The Fifth Circuit denied Eldridge's request for a certificate of

appealability, *Eldridge v. Quarterman*, No. 08-70012 (5th Cir. April 28, 2009).  On August 5, 2009,

3

the State of Texas set an execution date of November 17, 2009.  The Supreme Court denied *certioarari*, on November 2, 2009.  *Eldridge v. Thaler*, No. 09-5619 (Nov. 2, 2009).

Although there is some overlap between questions of mental retardation and questions of mental illness, a claim of incompetency to be executed does not become ripe until execution is imminent.  *See Stewart v. Martinez-Villareal*, 523 U.S. 637, 644-645, 118 S.Ct. 1618, 1622 (1998); *see also Herrera v. Collins*, 506 U.S. 390, 406, 113 S.Ct. 853, 863, 122 L.Ed.2d 203 (1993) ("[T]he issue of sanity is properly considered in proximity to the execution.").  The *Atkins* hearing did not focus on whether Eldridge was presently insane but instead on whether he had been retarded throughout his life.

On August 19, 2009, Eldridge filed a motion in the state trial court for appointment of a mental health expert to make a preliminary evaluation of his competence to be executed.  Eldridge sought the expert in preparation for moving under Article 46.05 of the Texas Code of Criminal Procedure to determine his competency to be executed.  The state trial court granted funding for Dr. Mary Alice Conroy to conduct a preliminary competency evaluation.  On September 4, 2009, Dr. Conroy interviewed Eldridge for two hours.  She found that Eldridge appears to suffer from a psychotic disorder marked by hallucinations and delusions.

On September 17, 2009, the trial court granted the State's motion to have its expert, Dr. Mark S. Moeller, evaluate Eldridge's competency.  Dr. Moeller evaluated Eldridge on September 21, 2009, and filed a written report on October 8, 2009.  Dr. Moeller concluded that Eldridge was feigning mental illness to avoid execution.

Eldridge requested funding to retain a mental health expert to conduct a comprehensive competency evaluation and an evidentiary hearing.  The trial court denied these requests and denied

relief, signing the proposed findings of fact prepared and submitted by the State on the issue of Eldridge's competency to be executed. Those were filed on October 14, 2009. On November 16, 2009, a majority of the Texas Court of Criminal Appeals adopted the trial court's findings and denied relief in a two page *per curiam* opinion. *Eldridge v. Texas*, No. AP-76,256 (Tex.Crim.App. Nov. 16, 2009). One member of the court dissented. This federal motion followed.

## I.   The Legal Standards

### A.   The Anti-Terrorism and Effective Death Penalty Act

Eldridge's motion for appointment of counsel initiates a habeas corpus proceeding over which this court has jurisdiction. *See* 28 U.S.C. § 2251 (a)(2); *In re Hearn*, 376 F.3d 447, 457 (5th Cir. 2004). This petition is governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which became effective on April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997). This court is bound by the state courts' factual determinations unless Eldridge rebuts the presumption of correctness or shows that an exception applies.

### B.   *Ford* and *Panetti*

In *Ford v. Wainwright*, 477 U.S. 399 (1986), the Supreme Court held that "[t]he Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane." *Id.* at 410. A prisoner is incompetent to be executed when his "mental illness prevents him from comprehending the reasons for the penalty or its implications." *Id.* at 417. Once a prisoner seeking a stay of execution makes a "substantial threshold showing of insanity," due process requires a fair hearing on his competency to be executed, in accord with fundamental fairness. *Id.* at 426; *Panetti v. Quarterman*, 551 U.S. at 949. This includes the right to submit evidence and argument, including expert psychiatric evidence. *Id.*

5

### III.    The Record

In support of his motions, Eldridge submits evidence that he is paranoid-schizophrenic and delusional.  Among these alleged delusions is the belief that prison guards are poisoning his food; that he is living with his wife and that they have eight children; and that his brother Barry picks him up each day to go to work.  Eldridge has refused to eat for extended periods during his imprisonment and has lost approximately sixty pounds.  Motion For Stay of Execution, Ex. C at 37.  He has been hospitalized for pernicious anemia.  One of his attorneys has submitted an affidavit in which he describes Eldridge eating food from a vending machine by breaking off tiny bits and inspecting them before eating.  Eldridge explained that he feared that guards put pills or other foreign objects in the food.  *Id.* at Ex. F.

Concerns about Eldridge's mental health arose during his trial, when his bizarre behavior prompted the trial court to hold a competency hearing.  Eldridge spent four months in the Psychiatric Treatment Unit of the Harris County Jail, where Dr. Richard B. Austin, Jr. found him to be "mentally decompensated" and "chronically dysfunctional."  *Id.*, Ex. A at 2.  A jury eventually found Eldridge competent to stand trial.  In 2003, Dr. Walter Quijano evaluated Eldridge in connection with his *Atkins* claim.  Dr. Quijano opined that Eldridge suffered from paranoid schizophrenia.  *Id.* at Ex. B.

Dr. Conroy conducted a preliminary evaluation of Eldridge on September 4, 2009.  She noted that the funds allocated for her work did not allow her to conduct a comprehensive evaluation or reach a definitive conclusion on his competency.  Dr. Conroy was able to conduct a sufficient examination to conclude that Eldridge appeared to suffer from paranoid delusions and may be acutely psychotic, noting that his "entire presentation indicated a break from reality."  Dr. Conroy

observed that Eldridge's thought patterns were "confused, disorganized, and replete with loose associations typical of an individual who is psychotic." Dr. Conroy's conclusion was that Eldridge is "highly unlikely to understand the concept of execution or its rationale." *Id.* at Ex. D 3-4.

Eldridge's counsel also submitted an affidavit describing encounters and meetings with Eldridge over the last several years. The affidavit states that Eldridge's mental health has deteriorated greatly over the last several years; that he exhibits severe mental illness and is delusional; and that he does not understand that his execution is imminent or the reason for his execution. *Id.* at Ex. E 1-3. Eldridge also submitted records of other mental-health examinations.

The State notes that numerous experts over the years have concluded that Eldridge has feigned symptoms of mental illness. The State's expert in Eldridge's state competency proceeding reached the same conclusion. *See* Findings of Fact at 5. The State argues that the evidence shows malingering in an effort to avoid execution, not mental illness.

Eldridge contends, and the State does not deny, that the state court granted only enough funding for Eldridge's expert to conduct a preliminary evaluation, accepted an expert opinion on the ultimate issue from the State's expert, and did not give Eldridge an opportunity to challenge or respond to the State's expert opinion.

## IV.   Analysis

### A.   A Substantial Threshold Showing Of Insanity

Eldridge has made a substantial threshold showing of insanity. He has submitted evidence from lay observers about his bizarre behavior and his delusional statements. He has submitted expert evidence corroborating these lay observations, opining that he is likely psychotic and that his psychosis makes it probable that he is incompetent to be executed.

The State raises serious questions about whether Eldridge is malingering.  Those questions are based on Eldridge's past history, which includes prior evidence of malingering, and the opinion of the State's expert.  Eldridge's history is certainly relevant, but it is not dispositive.  The ultimate issue on the question of competency to be executed is the prisoner's *present* mental state when execution is imminent.  *See Martinez-Villareal*, 523 U.S. at 644-645 (competency to be executed cannot be determined until execution is imminent).  Eldridge has submitted evidence that his mental health has deteriorated over the past few years.  *See* Motion For Stay Of Execution Ex. E.  While Eldridge's history certainly bears on his credibility, it does not, on this record, answer the question whether he is presently insane and incompetent.

In light of Eldridge's evidence, due process required the state habeas court to grant Eldridge a fair hearing on his claim of incompetency. He is entitled to, "among other things, an adequate means by which to submit expert psychiatric evidence in response to the evidence that had been solicited by the [S]tate . . . ." *Panetti*, 551 U.S. at 948.  Instead, the state court granted only enough funding for Eldridge's expert to conduct a preliminary evaluation, accepted the State's expert opinion on the ultimate issue, and did not give Eldridge an opportunity to challenge or respond to the State's expert opinion.  While Eldridge received more process than did the inmate in *Panetti*, and although Eldridge has not presented evidence of the type of virtually life-long severe mental illness that was presented in *Panetti*, Eldridge did present sufficient evidence to require the basic protections outlined in *Ford* and *Panetti*.  He did not receive them.  As a result, the state court findings are not entitled to deference under the AEDPA.  *Id.*

Eldridge is entitled to an opportunity to submit evidence and arguments, including expert psychiatric evidence, on the question of insanity.  That requires a hearing to determine whether

Eldridge is competent to be executed.  Recognizing the State's legitimate interest in carrying out its sentence, this matter will be resolved on an expedited basis.

### B.    Appointment Of Counsel

Title 18 U.S.C. § 3599(a)(2) provides for appointment of counsel in a habeas corpus proceeding when the petitioner is financially unable to obtain adequate representation on his own. This court previously determined that Eldridge is indigent.  The parties dispute the relevant standard for appointment of counsel in this case, with Eldridge arguing that the required showing is less than a substantial threshold showing of insanity.  Because Eldridge has made a substantial threshold showing, it is unnecessary to resolve the parties' disagreement over the applicable standard. Eldridge has met the more stringent standard argued for by the State.  Lee Wilson is appointed to represent Eldridge.

### C.    Stay Of Execution

"Once a capital defendant invokes his right to appointed counsel, a federal court also has jurisdiction under § 2251 to enter a stay of execution."  *McFarland v. Scott*, 512 U.S. 849, 858 (1994).  Because Eldridge has made a substantial threshold showing of insanity and is entitled to a fair hearing on his competence, a limited stay of execution is necessary.  Eldridge's request for a stay of execution is granted.

### D.    Expert Funding

Eldridge has also filed a sealed, *ex parte* motion for authorization of funds for expert assistance.  18 U.S.C. §3599(f) permits a petitioner to file a sealed, *ex parte* motion for investigative assistance on "a proper showing . . . concerning the need for confidentiality."  Eldridge has made that showing.  Eldridge's motion for leave to file *ex parte* is granted.

The standard for funding investigative and expert assistance is found in 18 U.S.C. §3599(f). Under that statute, Eldridge must show that the requested services are "reasonably necessary." *Id.*; *Hill v. Johnson*, 210 F.3d 481, 487 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001); *Fuller v. Johnson*, 114 F.3d 491, 502 (5th Cir.), *cert. denied*, 522 U.S. 963 (1997). Eldridge seeks the assistance of a mental health expert to conduct a comprehensive evaluation of his competency. The Supreme Court has held that such expert evidence is necessary for a fair determination once the prisoner has made a substantial threshold showing of insanity. *Panetti*, 551 U.S. at 949; *Ford*, 477 U.S. at 424. Eldridge's motion is granted.

**V.      Order**

1.      Eldridge's Motion To Stay Execution (Docket Entry 78) is granted. Eldridge's execution is stayed for 90 days from the date of this Order.

2.      Eldridge's Motion For Appointment Of Counsel (Docket Entry 80) is granted. Lee Wilson, Esq. is appointed to represent Eldridge in this proceeding.

3.      Eldridge's Motion For Approval Of Expert Funding (Docket Entry 81) is granted. Eldridge may spend $7,500 for the expert assistance specified in his motion. The Motion for Leave to File under Seal is granted.

4.      A scheduling conference will be held on **November 24, 2009 at 9:00 a.m.**

SIGNED on November 17, 2009, at Houston, Texas.

Lee H. Rosenthal
United States District Judge