THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

* * * * *

GERALD CORNELIUS ELDRIDGE,   *      CIVIL ACTION 05-1847
        Petitioner           *
                             *
Versus                       *      Houston, Texas
                             *
RICK THALER, Director,       *
Texas Department of          *
Criminal Justice,            *      9:00 a.m.
Correctional Institutions    *
Division,                    *
        Respondent           *      November 24, 2009

* * * * *

**SCHEDULING CONFERENCE**

BEFORE THE HONORABLE LEE H. ROSENTHAL
UNITED STATES DISTRICT JUDGE

* * * * *

**THIS TRANSCRIPT HAS BEEN FURNISHED AT PUBLIC EXPENSE
UNDER THE CRIMINAL JUSTICE ACT AND MAY BE USED ONLY AS
AUTHORIZED BY COURT ORDER.   UNAUTHORIZED REPRODUCTION
WILL RESULT IN AN ASSESSMENT AGAINST COUNSEL FOR THE
COST OF AN ORIGINAL AND ONE COPY AT THE OFFICIAL RATE.
General Order 94-15, United States
District Court, Southern District of Texas**

Proceedings recorded by computer stenography
Produced by computer-aided transcription

1  **APPEARANCES:**

2  For the Petitioner:

3       **MR. LEE WILSON**
        Attorney at Law
4       P.O. Box 52447
        Houston, TX 77052-2411
5
        **MR. GREGORY N. JONES**
6       Boyar Miller
        4265 San Felipe, Suite 1200
7       Houston, TX 77027

8       **MR. GREGORY W. WIERCIOCH**
        Texas Defender Service
9       430 Jersey Street
        San Francisco, CA 94114
10
   For the Respondent:
11
        **MS. GEORGETTE P. ODEN**
12      Office of Texas Attorney General
        300 W. 15th Street, 8th Floor
13      Austin, Texas 78701

14      **MR. ERIC J.R. NICHOLS**
        Deputy Attorney General
15      For Criminal Justice
        P.O. Box 12548, Capitol Station
16      Austin, TX 78711

17  Court Reporter:

18      **EDWARD L. REED**
        515 Rusk, Suite 8016
19      Houston, Texas 77002

20

21

22

23

24

25

1            THE COURT:  Eldridge, everybody ready?

2            MR. WILSON:  Yes, Your Honor.  Lee Wilson for

3   Mr. Eldridge.

4            MR. JONES:  And Greg Jones.

5            MR. WIERCIOCH:  Your Honor, this is Greg

6   Wiercioch from San Francisco, California for the

7   Petitioner.

8            MR. NICHOLS:  Good morning, Your Honor.  Eric

9   Nichols and Georgette Oden for the State.

10            THE COURT:  All right, thank you very much.

11                 This is a Scheduling Conference.  Stay was

12   for 90 days.  The expert, I gather, has already been

13   retained; correct?

14            MR. WILSON:  I believe not, not as of today,

15   Your Honor.  That's my understanding.  Mr. Wiercioch had

16   some contact with Dr. Roman.

17                 Can you hear me, Mr. Wiercioch?

18            MR. WIERCIOCH:  Yes.

19                 Yes, I've contacted Dr. Roman, Your Honor,

20   and told him about the stay and gave him a copy of this

21   Court's order.  I've not yet heard back from him.

22            THE COURT:  All right, let's work backwards

23   from the 90 days and figure out when it will be

24   reasonable to expect the next motions to be filed, and

25   if an evidentiary hearing is required, when that should

1  be scheduled for?

2       MR. WILSON:  Your Honor, we would like to

3  address the Court.  We feel we need more than 90 days

4  to finish our work.

5       THE COURT:  How long will the expert need to

6  finish the examination and provide the report?

7       MR. WILSON:  I think Mr. Wiercioch would be

8  best to answer that question, Your Honor.

9       THE COURT:  Mr. Wiercioch?

10      MR. WIERCIOCH:  Yes, Your Honor.  What I wanted

11  to set out is the fact that we have not yet had a

12  meaningful opportunity to develop the facts of our **Ford**

13  claim.  As this Court said in its order from last week,

14  the State Court violated the procedural due process by

15  not giving us the opportunity to have our own expert who

16  could rebut or challenge the State expert's findings.

17  So there is no deference here.  We're working from a

18  blank state.  This Court's going to be applying de novo

19  review.  And we have yet to file our Amended Petition,

20  which would include that **Ford** claim.  So this is a

21  situation where, because we haven't had adequate fact

22  finding procedures -- not only appointed counsel, but

23  funding for experts and possibly investigative

24  assistance, as well -- that again we're working from a

25  blank slate, but we were not able to file our **Ford**

1   petition.

2          THE COURT:  I don't mean to cut you off,

3   Mr. Wiercioch, and I'm sorry you're not here.  For a

4   matter of this import, it would be helpful to have

5   everyone present, but I understand you're in San

6   Francisco.

7          To say that this is a blank slate is true

8   in part, but not completely true.  There is an enormous

9   record in this case.  There was a vigorously and

10  thoroughly litigated *Atkins* claim.  Much of the

11  information that was presented in connection with that

12  claim is going to apply and be relevant to the **Ford**

13  claim.  So there has been an opportunity that was taken

14  advantage of earlier in this litigation to obtain a

15  large amount of relevant information as to

16  Mr. Eldridge's background, both in school, in work and

17  in social and family settings.  So much of that

18  information is in the record.

19          You do now have funds to retain the

20  expert, and my question to you is:  Given -- and I

21  understand that the expert will also need time to look

22  through this information.  But if you could just give me

23  a more specific idea of when you will have a report and

24  what kind of briefing -- motion and briefing schedule

25  would be appropriate to put into place, or if we should

1  schedule an evidentiary hearing and present and put into
2  place a briefing schedule that would be anchored by that
3  date, which may make the most sense, we can go from
4  there.
5          MR. WIERCIOCH:  Well, Your Honor, what I would
6  propose -- what we would propose is 180 days to allow us
7  to file the *Ford* petition.
8                Now, the reason I say that -- and I don't
9  disagree that there is an enormous amount of information
10 here that's already been generated.  However, the
11 Supreme Court, in remanding the *Scott Panetti* case, said
12 that expert evidence was absolutely essential, and it
13 discussed -- it cited to the amicus brief from the
14 American Psychiatric Association setting out the ways in
15 which experts could inform the Court on the competency
16 determination.  And one of the things that that amicus
17 brief says that the Supreme Court cited is that the
18 experts must use multiple sources of information in
19 making their determinations, because that enhances the
20 accuracy of the determination.
21                So, although the Court may be familiar
22 with a lot of the documentation in Mr. Eldridge's case,
23 our expert is not, and that documentation now totals
24 several thousand pages.  I'm not saying the expert has
25 to look at every one of those pages, but that

1  information is one of those multiple sources of

2  information.

3          The other source of information is what

4  are called collateral contacts, witnesses who may have

5  some idea about Mr. Eldridge's behavior:  Family

6  members, friends, guards, inmates, treatment staff.

7  Those people have to be identified, those people have to

8  be interviewed, and the results of those interviews

9  reviewed by the expert as well.

10         And then finally, of course, there is the

11  evaluation itself by the expert.  And again, the APA

12  brief talks about how it is important for the expert to

13  have multiple visits with the inmate in order to enhance

14  the accuracy of the determination.

15         I would direct the Court's attention to a

16  very similar case out of the Western District of Texas

17  from last year.  This is the **Jeffrey Wood vs. Quarterman**

18  case.  That can be found at 572 F.Supp 2d, 814.  Almost

19  identical.

20         There was no fact development procedures

21  allowed in state court.  The Federal District Court

22  stayed the execution, allowed for the appointment of

23  counsel and funding for an expert.  Initially, the Court

24  gave around 70 days to file the **Ford** petition.  That

25  ended up being 215 days with continuances granted in

1  order for investigative and expert assistance to

2  continue.  And the Court then also set out 60 days for

3  the State to respond to the petition, another 30 days

4  for the reply, and then one to two months after all of

5  those pleadings were filed to tentatively set an

6  evidentiary hearing.

7          So that's what we would propose here, Your

8  Honor.

9      THE COURT:  Let me hear from the Government,

10 please.

11     MR. NICHOLS:  Good morning, Your Honor.  Eric

12 Nichols.

13         We believe that under these circumstances,

14 in this kind of a claim, the Court has recognized it can

15 go forward.  It is appropriate to set an evidentiary

16 hearing.  So we think the Court is going down the right

17 track to go ahead and find a good date for an

18 evidentiary hearing, work backwards.  The question of

19 how quickly you can work it up is how hard people want

20 to work to work it up.

21         So I think that our advice would be to

22 obviously give the petitioner an opportunity to develop

23 expert testimony.  But I think in situations where

24 Court's set deadlines, experts kind of adjust their

25 schedules accordingly.  And so I don't know if 90 days

1 is exactly the right amount of time, but I think that

2 there should be a schedule, and I think the Court should

3 set a firm date for an evidentiary hearing, work

4 backwards, set some deadlines.

5          I helped to try the **Scott Panetti** case on

6 remand before Judge Sparks.  What we did in that case

7 was, we had a discovery schedule set, we had provisions

8 for expert disclosures, we had provisions for expert

9 depositions, which, as the Court knows from other civil

10 cases, really moved the hearing along.  And as a result

11 of setting that schedule that Judge Sparks set, we were

12 able to try that case, I think, in -- I think it was

13 maybe three days.  We presented the expert's life to the

14 Court and we presented a lot of the record material, you

15 know, the medical records, other materials relating to

16 the issues to the Court to review in camera at its

17 leisure.

18          So State advocates for a scheduling order

19 that contains those hard dates and let's work it up.

20          MR. WIERCIOCH:  Your Honor, if I could respond

21 to that in part.

22          In the **Scott Panetti** case, I believe

23 Mr. Nichols is referring to the second evidentiary

24 hearing, which took place in 2008.  This was right after

25 the remand from the Supreme Court and this was late

1   August of 2007.  The Court at that time, at that status

2   conference, set the hearing for roughly 150 days out.

3   So it took place in February of 2008.

4                    Keep in mind, though, in that case this

5   was the second hearing.  The Court had already had a

6   hearing a few years earlier and the petition had already

7   been filed a few years earlier.  So, even under those

8   circumstances, 150 days was set before the hearing.

9   We're in a much different situation here where we

10   haven't even developed the facts of this claim yet.

11             THE COURT:  Well, again, I'm not sure that

12   anything Mr. Nichols said is that inconsistent with the

13   position that you are taking, number one.

14                    Number two, I've looked at the case that

15   you cited and I don't see any indication -- and I could

16   be wrong because I've just looked at it very quickly --

17   that in that case there had been a previously heavily

18   litigated *Atkins* claim prior to the raising and

19   litigation of the *Ford* claim.

20                    So we are in a somewhat different posture

21   because much of the work that you identified, not all

22   of it -- I'm not suggesting that.  But much of the work

23   that you identified as being particularly

24   time-consuming -- identifying family members, friends

25   who knew the petitioner at various stages of his life

1   and who could provide important information about him

2   in those different stages of his life -- have been

3   identified, have been examined on the record, and

4   records that are importance to fleshing out the claim

5   have been gathered.  So much of that time has already

6   been spent and the product of it is available.

7              So that weighs in favor of a somewhat

8   shorter period than you have indicated would be

9   necessary.

10             And I gather that no party is asserting

11   any kind of statutory limit on the amount of time we can

12   put into place at this point; is that correct?

13         MR. NICHOLS:  That's correct, Your Honor.

14         THE COURT:  All right.

15         MR. WIERCIOCH:  Your Honor, the only thing I

16   would say is, you know, an argument could be made that

17   we should file the petition within a year from the

18   setting of the execution date, which was August 5th of

19   this year, because that is kind of the factual predicate

20   that puts the *Ford* claim on the map in terms of making

21   it ripe.

22             THE COURT:  Sure.  So the Amended Petition

23   putting forward the *Panetti/Ford* claim, with as an

24   attachment a report prepared by your expert setting out

25   his findings and conclusions about Mr. Eldridge's

1    competence to be executed, that ought to be our first

2    date.  And if we were to -- you have asked to have that

3    date set for sometime at the end of February, is that

4    correct, or at the end of March?

5              MR. WIERCIOCH:  I was suggesting initially 180

6    days, which I think would be mid-May.

7              THE COURT:  I don't think we need anywhere near

8    that amount of time.  For the Amended Petition and the

9    report, I would think that the -- well, let me hear what

10   the State would view as reasonable before I --

11             MR. NICHOLS:  Your Honor, I thought we were

12   talking about 180 days initially for the entirety of the

13   process, and now it sounds like we're talking about 180

14   days just to get the Amended Petition.

15             THE COURT:  That's what the Petitioner is

16   asking for.

17             MR. NICHOLS:  That is excessive in the State's

18   view.  But if the Court's -- if the Court wants them to

19   get their expert to do his analysis and have that filed

20   with the --

21             THE COURT:  Amended Complaint?

22             MR. NICHOLS:  -- Amended Complaint, then -- I

23   mean, I'm hard pressed to understand why that couldn't

24   be done within the next 60 days, even considering the

25   holidays and everything else.

1    THE COURT:  So you are arguing for the end of
2  January, basically?
3    MR. NICHOLS:  Yes, Your Honor.
4    THE COURT:  Well, the obvious solution would be
5  somewhere inbetween those two dates, and I don't mean
6  that to be a facetious suggestion.  I do think that much
7  less time than the Petitioner has suggested, for the
8  reasons I've outlined, is necessary, and I would think
9  that the beginning of March should be ample, which would
10  take us -- so, if we set March 5th, 2010 as the date for
11  the Amended Petition, along with the report by the
12  expert, how long do you need to answer?  Is 30 days
13  enough?
14    MR. NICHOLS:  30 days, Your Honor.
15    THE COURT:  That would take us to -- let's set
16  it for April 5.
17    Respondent will file an Amended Answer.
18    And how long -- do you want a reply
19  opportunity for that?
20    MR. WIERCIOCH:  Yes, Your Honor.
21    THE COURT:  I would think that May 3rd would
22  give you ample opportunity.
23    And then at what point should we look to
24  be taking expert depositions?
25    MR. NICHOLS:  Your Honor, from the State's

1   perspective, we can be doing that during this process.

2            THE COURT:  I agree with that.

3            MR. NICHOLS:  So there is no reason to set

4   another deadline.  I think the next deadline maybe the

5   Court should look at would be a date for the hearing.

6            MR. WIERCIOCH:  I'm sorry, I didn't hear that,

7   Your Honor.

8            THE COURT:  We're looking at a date for the

9   hearing.  Probably, I would suggest looking at April and

10  early May.  I don't want to go any later than that.

11           MR. WILSON:  I'm sorry, Your Honor?

12           THE COURT:  April or early May.

13           MR. WILSON:  For --

14           THE COURT:  Hearing -- evidentiary hearing.

15                Are there any limits on counsel's

16  availability?

17           MR. WILSON:  Not on my part, Your Honor.  I

18  would ask the Court to set a deadline for **Daubert**

19  objections before the hearing, Your Honor.

20           THE COURT:  All right.

21           MR. WIERCIOCH:  Your Honor, I just caught part

22  of the State's suggesting that the depositions of

23  experts should take place -- and I didn't hear when.

24           THE COURT:  Basically to begin right after you

25  finish -- right after the deadline for filing the

1  Amended Complaint with the expert's report, which would

2  put the depositions basically in March and April, mostly

3  March.

4              I'd like to set **Daubert** filing.  We could

5  set the **Daubert** challenge date for the same date as the

6  respondent's answer, April 5th.  **Daubert** challenges.

7              Response to those can be in the normal

8  course, which would basically make them due April 26th.

9              And we would be looking at an evidentiary

10  hearing, I would think, the week of -- how about May 12,

11  13 and 14?  That ought to be plenty of time.

12       MR. WIERCIOCH:  Yes.  My only concern about

13  the depositions is that, obviously, we will be at a

14  disadvantage with the State having our expert report

15  and/or Amended Petition.  However, we won't get the

16  State's response or report until April 5th, so we would

17  not be able to take the depositions with the same

18  information that the State would have in taking our

19  expert's deposition?

20       MR. NICHOLS:  Your Honor, if I may be heard.

21  We'll make sure they have the opportunity to get the

22  expert's materials and depose the expert prior to the

23  schedule date.

24       THE COURT:  All right.  So you'll have your

25  report after the March 5th deadline.  You'll file your

1  expert report what, two weeks later?

2       MR. NICHOLS:  I think we could do that.  We

3  need to check with the experts, but if there is some

4  problem there, but certainly we could do it by the time

5  the answer is filed on April 5th.

6       THE COURT:  Right.

7       MR. NICHOLS:  And then also provide the

8  materials that underlie the expert's work, which we'll

9  obviously ask for on the other side, as well, and get

10 that out immediately.  And that will still give us over

11 a month to get that deposition done before the hearing.

12      THE COURT:  Well, then the **Daubert** challenge

13 deadline needs to be moved because that doesn't work.  I

14 agree with that.

15      MR. NICHOLS:  And, Your Honor, I don't

16 foresee -- I mean, from my experience with the **Panetti**

17 case, I don't see foresee challenges to an expert's

18 qualifications.  It's going to boil down to the issues

19 of whether the Court feels like the expert testimony is

20 helpful to make the Court's ultimate decision, and

21 that's something that you're going to have to mold into

22 your ultimate decision anyways.

23      THE COURT:  Right.  Basically, I think the

24 resolution of the **Daubert** challenges will be part and

25 parcel of -- any **Daubert** challenges will basically be

1   arguments about the reliability and helpfulness of the

2   expert evidence, which will be part and parcel of the

3   analysis of the claims and defenses.

4             But we would then move the **Daubert**

5   challenges.

6             Can we get the **Daubert** challenges, then,

7   filed by April 23rd?

8        MR. WILSON:  I think that would work.  I would

9   ask Mr. Wiercioch if he thinks that's reasonable.

10       MR. WIERCIOCH:  Yes, that sounds reasonable to

11  me, Your Honor.

12       THE COURT:  All right.

13       MR. WIERCIOCH:  Your Honor, just again to back

14  up for one second, one of the problems we ran into in

15  the **Scott Panetti** second hearing is that the judge

16  allowed for depositions of experts.  However, whoever

17  called the deposition had to pay for the State's -- I'm

18  sorry, for the expert's time.  We were not able to do

19  that because we were not allowed funds.  So we did not

20  take any depositions of the State's experts.  The State

21  took depositions of all of our experts.

22       THE COURT:  If what you are asking is whether

23  it would be appropriate to have additional funds allowed

24  to permit you to pay your expert -- or permit you to pay

25  the expert so you can depose that expert; is that what

1   you are asking?

2        MR. WIERCIOCH:  The judge put that burden on

3   whoever was calling for the deposition and put that

4   burden on the State when they called our experts.  I

5   don't believe the State ever paid our experts in that

6   case.  Because our client was indigent, we were unable

7   to even take depositions.  So any preparation time or

8   time that the expert spent traveling to the deposition

9   and actually taking the deposition, we were never

10  compensated for that.  It just created a lot of problems

11  that I want to try and nip in the bud in this situation.

12       MR. NICHOLS:  Your Honor, if I may be heard, I

13  think the issue there was that it was the Petitioner's

14  request that that be the case in the **Panetti** case.  So I

15  think what Mr. Wiercioch is referring to is the problem

16  of the Petitioner's own making in that case.

17       I would suggest that we just do this where

18  folks are going to bear the cost of their expert no

19  matter what they are doing, whether they're giving a

20  deposition, whether they are here testifying before the

21  Court.  And that way, it will make it much cleaner.  If

22  they need additional funds to fund their expert, then

23  they can approach the Court with an application on that.

24       THE COURT:  Which, as I understand, is the

25  usual way it operates.

1          MR. NICHOLS:  Right.  And it was changed in

2     *Scott Panetti* case because of the Petitioner's request

3     to do that.

4          THE COURT:  All right.  I don't have a problem

5     with that approach.  Is that acceptable to everyone?

6          MR. WILSON:  Yes, Your Honor.

7          THE COURT:  All right.  We've got, I think, a

8     workable schedule.

9          MR. WILSON:  I have one suggested --

10         THE COURT:  I do want to set a date for the end

11    of the week of May 7 for filing exhibit lists, witness

12    lists.

13              Do we need anything else filed besides

14    those two categories of information?

15         MR. WILSON:  Your Honor, I was just going to

16    ask the Court if the Court would want post-hearing

17    briefs like we did on the mental retardation claim.  I

18    don't know that the Court would think that's necessary.

19         THE COURT:  I probably don't know the answer to

20    that until we have the hearing.  Or I would be surprised

21    if the parties didn't file pre-hearing briefs.  But

22    frankly, it would probably be more useful to me to

23    have -- well, this case may be a little bit different

24    because so much of the information is already out there.

25    I don't know if a post-hearing brief will be necessary.

1          MR. WILSON:  Your Honor, when the time comes
2    for the hearing, I suppose I will be filing a motion,
3    because we are appointed, so that a daily transcript may
4    be prepared in case the Court does want a post-hearing
5    brief, and we don't have to wait an additional 30 days
6    or 20 days for the court reporter to finish that.  I
7    suppose we will cross that bridge when the time comes.
8          THE COURT:  We will.
9          MR. NICHOLS:  The only thing I was going to
10   add, Judge, is that what makes this case a little bit
11   unique, too, is that I'm sure the Court has already
12   started to grapple with the applicable standard for
13   rational understanding.  And it's an issue that we
14   litigated in the **Panetti** case on remand from the
15   Supreme Court.  The Supreme Court articulated a rational
16   understanding standard, but failed to really provide any
17   meaningful guidance to any court in applying that
18   standard.

19          The State took the position before Judge
20   Sparks that, necessarily, especially if we're going to
21   rely on the type of expert analysis that Petitioner is
22   seeking to rely on in this case, that we need to adopt a
23   standard that more closely conforms to language in the
24   **Panetti** Supreme Court opinion about an individual's
25   capacity to understand.

1          Petitioners in other cases -- I assume

2   they are going to take the same position in this case --

3   try to gravitate towards a standard of actual

4   understanding, that is what the individual inmate

5   actually understands or doesn't understand.

6          So the only reason I raise that now is

7   that that is an issue that I have confidence the Court's

8   going to look at on its own.  I don't know if you need

9   briefing from the parties on that issue.  But that was

10  the only thing that I thought, if you did want some

11  briefing, it might have be helpful to do that before the

12  hearing rather than after.

13       THE COURT:  What I will try to do is, 30 days

14  before the hearing, let you know if I do think that

15  briefs are going to be helpful and, if so, what legal

16  issues I'd like them to focus on; not to limit you to

17  those issues, but to give you some guidance on what

18  would be appropriate or most helpful to me.

19          Are you aware, Mr. Nichols, of any cases

20  that are currently in the pipeline to go up to the Court

21  that clarify this?

22       MR. NICHOLS:  Well, we hope to get the **Panetti**

23  case up, but for whatever reason that case has been

24  stalled at the Fifth Circuit.  We felt like the **Panetti**

25  case, since it had already been addressed by the Supreme

1   Court, would be a good case to go back up before the

2   Circuit.  It hasn't happened for reasons that are not

3   attributable to the State by any means.

4            And then counsel referred to the *Wood*

5   case.  It's still making its way along.  I think, Your

6   Honor, you could look at the decision -- I'm sure the

7   Court will look at the decision that Judge Sparks

8   entered on remand.  He had some discussion of the

9   relevant standard.  The *Wood* case is still making its

10  way up.

11           And I think the bottom line is, Your

12  Honor, you may have the opportunity to write on a little

13  bit of a blank slate in terms of making your own

14  judgment as to what the appropriate legal standard is.

15           As we all know, when the Supreme Court

16  does what it does, which is send a case back without any

17  real guidance, we're going to be in a situation where

18  eventually we're going to try to get some guidance from

19  the Fifth Circuit as to how this standard of rational

20  understanding is to be crafted and how it is to be

21  applied across the board in every case, which, of

22  course, is the State's interest is to make sure that at

23  the end of the day we do have a standard that is capable

24  of being implemented in cases, and also it's constructed

25  in a way that does allow a court to rely meaningfully on

1  expert testimony.

2            And so I think, again, this is kind of an

3  opportunity for this Court to weigh in on how this

4  standard of rational understanding is really going to be

5  applied in cases.

6            THE COURT:  All right, thank you.

7            MR. JONES:  Your Honor, maybe I missed

8  something or maybe presumed, but my understanding is

9  that the *Daubert* objections are due on the 23rd of

10  April?

11            THE COURT:  That's right.

12            MR. JONES:  And I missed -- is the assumption

13  that the responses are going to be 21 days after that,

14  14 days after that?

15            THE COURT:  That's going to be not enough time

16  to get the responses in before the hearing.  So I would

17  actually like the responses to be filed on a shorter

18  basis.

19            The real problem with this is that March 5

20  is probably about two weeks later than this schedule is

21  best served by if we want to have our hearing at that

22  point in May, and I very much want to keep those dates

23  because they are open, and I know that it's very hard to

24  schedule things once you get into the May and beyond

25  time frame.

1            So I'm actually looking at the schedule

2    and thinking what we ought to do is move the Amended

3    Complaint and expert report deadlines up to February

4    19th, which is only two weeks different, but that two

5    weeks will make the scheduling much easier.  And then

6    have the response by -- March 19th is plenty of time, I

7    would think.

8            MR. WIERCIOCH:  Your Honor, I'm a little

9    concerned about March 19th.  I mean, for all intents

10   and purposes, you know, this holiday -- major holiday

11   season coming up right now is going to wipe out between

12   Thanksgiving and the end of the year a lot of the

13   ability of experts and investigators to just drop

14   everything and help us.

15           THE COURT:  Wait, I'm sorry.  I'm not aware

16   that there is a holiday that extends from November 26th

17   to January 2nd.  I mean, there are lots of things that

18   people do during this time of the year, but that's a

19   little bit of an over-statement.

20           MR. WIERCIOCH:  Your Honor, I'm just saying

21   losing those two weeks from March 5th to February 19th

22   is substantial.

23           THE COURT:  All right.  Well, how about if I

24   give you back one of those weeks?  I take your point

25   that it is a busy time of year.

```
 1              February 26th for the Amended Complaint
 2   and expert reports.  I think we can keep March 19,
 3   though, for the response.  That puts the State under
 4   some pressure, but the State --
 5              MR. NICHOLS:  That's fine, Your Honor.
 6              THE COURT:  That's fine.
 7              And then if we have the *Daubert*
 8   challenges, we could then move the *Daubert* challenges up
 9   to April 9, which gives an opportunity for a response to
10   be filed April 30 and the hearing set from May 12 to 14.
11   And on May 7, exhibit lists and witness lists.
12              I do think it might be helpful for us to
13   set one more date for kind of an interim status
14   conference, to be sure that the deadlines are still
15   working, that there is no need for adjustment, that
16   there is sufficient time for the work to be done
17   properly and thoroughly.  And perhaps the best time to
18   look for that would be -- how about March 12, does that
19   work?
20              MR. WIERCIOCH:  Yes, Your Honor.
21              THE COURT:  I think that does work.  All right,
22   March 12, at 9:00 a.m..
23              Anything else that we need to do today?
24              MR. WILSON:  Your Honor, Mr. Wiercioch did
25   file a formal motion to be appointed as co-counsel.
```

```
 1              THE COURT:  I'll grant it, Mr. Wiercioch.
 2              MR. WIERCIOCH:  Your Honor, if I could say
 3    something about that before you do so.  My forte is not
 4    in evidentiary hearings.  I am hoping to continue to
 5    help in preparation for the hearing and any briefing
 6    that may be needed before, during and after.
 7                  My wife is expecting in April, early
 8    April, and I'm hoping that at some point another
 9    attorney from our office could be substituted in for me
10    to assist in the hearing itself.
11                  Do you think that would be possible?
12              THE COURT:  I don't know of any reason that it
13    would not be.  You do have some very good lawyers with
14    fine skills for participating in evidentiary hearings in
15    the courtroom.  So I'm not aware of any reason that
16    there wouldn't be a grant of a substitution motion.  But
17    I think you are in good shape, anyway.
18              MR. WIERCIOCH:  Okay, thank you, Your Honor.
19              THE COURT:  And congratulations.
20              MR. WIERCIOCH:  Thank you.
21              THE COURT:  All right, anything else we need to
22    do now?
23              MR. WILSON:  Not on behalf of Mr. Eldridge,
24    Your Honor.
25              THE COURT:  I'll get a scheduling order out so
```

```
 1  you will all have it.
 2          MR. WILSON:  Yes, sir, Your Honor.  Thank you
 3  for the Court's time.
 4          THE COURT:  Thank you very much.
 5          MR. WIERCIOCH:  Thank you.
 6          [Proceedings adjourned]
 7               REPORTER'S CERTIFICATE
 8
 9  I certify that the foregoing is a correct transcript
10  from the record of proceedings in the above-entitled
11  cause.
12
13  /s/ Ed Reed_____        7-8-11_____
    Edward L. Reed                    Date
14  Official Court Reporter
15
16
17
18
19
20
21
22
23
24
25
```